## In re LEIBOWITT.

### STEIN v. LEIBOWITT et al.

### No. 6426.

Circuit Court of Appeals, Third Circuit.
Dec. 10, 1937.

334

David Goldstein, of Asbury Park, N. J., for appellant.

Potter & Fisher, of Long Branch, N. J., and Katzenbach, Gildea & Rudner, of Trenton, N. J. (Louis Rudner, of Trenton, N. J., of counsel), for appellees.

Before BUFFINGTON, DAVIS, and BIGGS, Circuit Judges.

BIGGS, Circuit Judge.

This is an appeal from an order of the court below confirming the findings of the referee in bankruptcy to whom the case at bar stands referred, holding that sums of money accruing to a bankrupt after adjudication, by way of payment of premiums as salary or commissions upon policies written by him prior to adjudication, are the property of the bankrupt and are not part of his estate in bankruptcy.

Upon the day of adjudication and for a period of at least five years prior thereto, the bankrupt had served as a collecting and soliciting agent for the Prudential Insurance Company of America and had written a number of policies of insurance for his employer. By virtue of the terms of his contracts of employment with the Prudential Insurance Company, the bankrupt was entitled to receive certain sums designated as salary, and additional sums which in fact represented commissions, based upon the amount of premiums due, collected, and paid upon policies written by the bankrupt. Since knowledge of the nature of the contract of employment of the bankrupt by the insurance company is vital to the disposition of the case at bar, we will proceed immediately to its consideration. Typical provisions thereof are as follows:

"In consideration of my appointment as agent of The Prudential Insurance Company of America, I do hereby agree as follows:

"Sec. 1. To devote my entire time to the business of the Company; to promote its success and welfare and to conform to and abide by the instructions, rules and requirements of the Company.

"Sec. 2. To canvass regularly for new Industrial, Intermediate and Ordinary insurance, and to collect Industrial premiums regularly every week and Intermediate premiums regularly every month. * * *

"Sec. 4. That I shall receive for my services hereunder 'Weekly Salary' as provided for in Section 6, 'Additional Weekly Salary' as provided for in Section 8, 'Intermediate Collection Commission' as provided for in Section 9, and 'Compensation on Ordinary Insurance' as provided for in Sections 12 to 19, inclusive. * * *

"Sec. 12. That during the continuance of this Agreement the 'Compensation On Ordinary Insurance' to be allowed me shall

be a commission upon premiums, when collected by me and paid over to the Company in cash, on the Ordinary policies issued from applications secured by me under this agreement, at the rates set forth in the table which immediately follows section 19 hereof, except in the case of policies issued as a result of the conversion of Group Life insurance certificates; and provided that commissions on premiums discounted and paid in advance shall be allowed me only on the due dates of such premiums.

"Sec. 13. That no compensation shall be paid to me on account of any policy after it has been canceled or become paid up, but if, during the continuance of this Agreement, I shall secure the revival of any policy issued under this Agreement, I shall be entitled to the compensation on account of such policy, as provided herein, as though such policy had not been canceled.
\* \* \*

"Sec. 17. That if the Company shall return the premiums upon a policy, I will repay to the Company on demand the amount of compensation received by me on such premiums."

The bankrupt obtained a rule to show cause why an order should not be entered directing the Prudential Insurance Company of America to turn over to him "what commissions as it presently holds upon renewal premiums which have accrued since the date of petitioner's (the bankrupt's) adjudication, and further directing such insurance company to pay over to the petitioner from time to time as his property any further commissions as shall accrue upon renewal premiums."

Section 70a, subsection (5) of the Bankruptcy Act, as amended, 11 U.S.C.A. 110 (a) (5), provides that a trustee in bankruptcy is vested by the operation of law with the title as the bankrupt as of the time of adjudication to all property which could have been transferred by the bankrupt by any means or which could have been levied upon and sold under judicial process against him. Section 47a, 11 U.S.C. A. § 75(a) of the Bankruptcy Act provides that the trustee shall be vested, as to property coming into the custody of the bankruptcy court, with all the rights, remedies, and powers of a creditor holding a legal or equitable lien thereon, and, as to all property not coming into the custody of the bankruptcy court, shall be deemed to be vested with all rights, remedies, and powers of a judgment creditor holding an execution duly returned unsatisfied. The rights of the trustee in the case at bar must be determined by the sections referred to.

Now it is the law that a contract right to collect money in the future is such a right as will pass to the trustee whether or not it is capable of being assigned. In re Gerstenzang, D.C., 5 F.Supp. 904; In re Erwin v. United States, 97 U.S. 392, 24 L. Ed. 1065. Ordinarily, the question of whether or not such a contract right may be levied upon or seized by equitable sequestration is one which must be determined by the law of the state in which the bankrupt is domiciled.[1] In the case at bar, however, it is clear that if the bankrupt's estate is to receive the compensation coming due to him after adjudication, the bankrupt must labor in a kind of involuntary servitude in order that the fruits of his labor may enhance his estate for the benefit of his creditors. Whatever may be the rights of a creditor, ordinarily created under the law of New Jersey, the Bankruptcy Act necessarily cuts across such purported rights. It is the undoubted policy of the Bankruptcy Act (11 U.S.C.A. § 1 et seq.), and it is a truly salutary one, that wages earned by a bankrupt after his adjudication become his absolute property and will not be subjected to any claim or lien on behalf of his estate. Progressive Building & Loan Company v. Hall, 4 Cir., 220 F. 45; Local Loan Company v. Hunt, 292 U.S. 234, 54 S.Ct. 695, 78 L.Ed. 1230, 93 A.L.R. 195; Seaboard Small Loan Corp. v. Ottinger, 4 Cir., 50 F.2d 856, 77 A.L.R. 956.

Had the bankrupt done all that he was required to do prior to adjudication to collect the compensation coming due, we have no doubt that a claim for this compensation would pass to his trustee and become an asset of the estate. This is not the case, however. One need only examine the sections of his contract of employment heretofore quoted, in order to see that substantial service still must be rendered by the bankrupt in order that the compensation referred to may become payable by the insurance company.

It is true that a substantial portion of the services creating the obligation of compensation were rendered prior to the ad-

---

[1] See Public Laws of New Jersey 1915, c. 115, p. 182, Cumulative Supplement Compiled Statutes 1911–1924, p. 1205, § 71—9a, and sections following.

judication, but, as is so clearly stated by the referee in his certificate to the trial judge, "* * * there is no way of separating the compensation for what is done (by the bankrupt) before and what is done after adjudication." Since the productive elements of the bankrupt's labor are inseparable in point of time, we hold that no contract rights therein can be deemed to pass to his trustee; nor can the trustee obtain any right therein by virtue of legal execution or equitable sequestration.

So holding, the decision of the court below is affirmed.