**In re Terry Vaughn MARSHBURN, Debtor.**

**Bankruptcy No. 80 B 01681 C.**

United States Bankruptcy Court, D. Colorado.

Aug. 28, 1980.

---

Maria J. Flora, Denver, Colo., for Provident Professional Fund, Inc.

Edmund G. Lambert, Denver, Colo., for debtor.

FINDINGS, CONCLUSIONS AND ORDERS ON OBJECTION OF PROVIDENT PROFESSIONAL FUND, INC. TO CLAIM OF EXEMPTIONS

PATRICIA A. CLARK, Bankruptcy Judge.

The matter before the Court is the objection of Provident Professional Fund, Inc. to the claim of exemptions of Terry Vaughn Marshburn, the Debtor in this proceeding. Mr. Marshburn claims that termination payments paid and to be paid him subsequent to bankruptcy by a former employer, State Farm Insurance Company, are exempt as earnings under Colorado law. A hearing was held on the creditor's objection on August 11, 1980, at which Maria J. Flora represented Provident Professional Fund, Inc. and Edmund G. Lambert represented the Debtor.

The facts are as follows. The Debtor was an independent contractor who sold insurance for State Farm Insurance Company (State Farm hereafter). The relationship between the Debtor and State Farm was governed by a State Farm Agent's Agreement contract. That contract provides that upon termination of the Agreement an agent is entitled to a percentage of the service compensation, net premium collections, and renewal premiums on insurance policies attributable to sales made by him so long as he continues to abide by the terms of his contract. In October, 1979, State Farm terminated its Agreement with the Debtor. Upon termination Mr. Marshburn was eligible for the termination payments. On April 30, 1980, Mr. Marshburn filed his

petition under Chapter 7 of the Bankruptcy Code (11 U.S.C. § 701, *et seq.*). By then he had received several termination payments from State Farm and other payments were contingently due him. The Debtor claims that any termination payments paid or to be paid him are exempt as earnings under C.R.S.1973, 13–54–104, as amended. Provident Professional Fund objects to the claimed exemption contending the termination payments are not earnings but are consideration for a covenant not to compete.

The initial question is whether the termination payments are property of the estate. Section 541(a)(1) of the Bankruptcy Code (11 U.S.C. § 541(a)(1)) provides:

§ 541. *Property of the estate.*

(a) The commencement of a case under section 301, 302, or 303 of this title creates an estate. Such estate is comprised of all the following property, wherever located:

(1) Except as provided in subsections (b) and (c)(2) of this section, all legal or equitable interests of the debtor in property as of the commencement of the case.

Clearly, termination payments in the Debtor's hands or due him at the time of the commencement of this case on April 30, 1980, are property of the estate. But, are termination payments which may be paid after the filing of the Debtor's petition also property of the estate?

■ Part of the legislative history of Section 541(a)(1) states:

The scope of this paragraph is broad. It includes all kinds of property, including tangible or intangible property, causes of action (see Bankruptcy Act § 70a(6)), and all other forms of property currently specified in Section 70a of the Bankruptcy Act § 70a . . . . House Report No. 95–595, 95th Cong. 1st Sess. (1977) p. 367, U.S.Code Cong. & Admin. News 1978, pp. 5787, 6323.

Under Section 70a(5) of the Bankruptcy Act, a trustee took "[T]itle to all wages, fees and commissions earned and accrued prior to bankruptcy, or that relate to services already performed, even though they may be paid subsequent thereto (footnote omitted)." 4A *Collier on Bankruptcy*, 14th ed. ¶ 70.34. The answer to the question of whether the termination payments paid subsequent to bankruptcy are property of the estate depends on whether such payments were earned prior to the filing of the petition.

■ *In re Wright*, 157 F. 544 (2d Cir. 1907) concerned a bankrupt who was a managing agent for a life insurance company under a contract which entitled him to collect renewal premiums on policies, written prior to his bankruptcy, so long as he continued to perform under his contract. The Second Circuit determined that the renewal premiums, payable after bankruptcy, were property of the estate pursuant to Section 70 of the Bankruptcy Act despite the requirement under the contract of continued performance after the bankruptcy. As Mr. Marshburn was terminated by State Farm prior to the filing of his petition, all termination payments to be paid him post–petition are based upon policies sold and services performed by him prior to the filing with one possible exception. That exception is set forth in Section IV–B–2 of his Agent's Agreement which provides:

If you qualify for payments by the respective Companies under subparagraph B–1, and so long as you have not, for a period of twelve (12) months following termination of this Agreement, either personally or through any other person, agency, or organization, solicited or sold, either at renewal time or otherwise, to that Company's policyholders which were credited to your account at the time of termination, any insurance coverage competitive with the insurance coverages sold by that Company, you shall qualify for the remaining monthly installments from that Company as provided in paragraph A.

Thus, Mr. Marshburn is required for five months after the filing of his bankruptcy petition to refrain from competing with State Farm in order to receive termination payments. However, that required contin-

ued service, if it can even be characterized as such, is minimal when compared to the substantial services rendered by the Debtor in selling the policies prior to his termination and prior to his bankruptcy filing. *Compare In re Leibowitt*, 93 F.2d 333 (3d Cir. 1937). In fact, according to the Agent's Agreement, the payments due Mr. Marshburn continue even in the event of his death, further emphasizing the minimal nature of his post–termination and post–petition services. 115 A.L.R. 627. Although not payable until after the filing of his petition, the Debtor had earned all termination payments to be paid him prior to that time. *In re Fahys*, 18 F.Supp. 529 (S.D.N.Y.1937). Consequently, all termination payments in the Debtor's hands on April 30, 1980, or thereafter paid to him, are property of the estate.

The next question is whether the termination payments, which are property of the estate, are exempt. Section 522(b) of the Bankruptcy Code (11 U.S.C. § 522(b)) allows a debtor to exempt certain property from property of the estate by choosing either the state or federal exemptions. Mr. Marshburn chose the Colorado exemptions and contends all termination payments are "earnings." C.R.S.1973, 13–54–104, as amended, provides in pertinent part:

13–54–104. *Restrictions on garnishment and levy under execution or attachment.* (1) As used in this section, unless the context otherwise requires:

(a) "Disposable earnings" means that part of the earnings of any individual remaining after the deduction from those earnings of any amounts required by law to be withheld.

(b) "Earnings" means compensation paid or payable for personal services, whether denominated as wages, salary, commission, bonus, avails of any pension or retirement benefits, avails of health, accident, or disability insurance, or otherwise.

(2)(a) Except as provided in subsection (3) of this section, the maximum part of the aggregate disposable earnings of an individual for any workweek which is subjected to garnishment or levy under execution or attachment may not exceed twenty-five percent of his disposable earnings for that week or the amount by which his disposable earnings for that week exceed thirty times the federal minimum hourly wage prescribed by section 206(a)(1) of the title 29 of the United States Code in effect at the time the earnings are payable, whichever is less.

(b) In the case of earnings for any pay period other than a week, a multiple of the federal minimum hourly wage equivalent in effect to that set forth in paragraph (a) of this subsection (2) as prescribed by the secretary of labor of the United States shall be used.

. . . . .

(4) The restrictions established by this section shall be adhered to whether or not the employer of the debtor is subject to garnishee process.

The parties did not refer the Court to any Colorado case construing this statute nor has the Court been able to locate any. In *First Nat. Bank of Guthrie v. Brown*, 579 P.2d 825 (1978) the Oklahoma Supreme Court concluded that the renewal commissions due an insurance agent were earnings as defined by the Oklahoma Consumer Credit Code. That Oklahoma definition of earnings is nearly identical with the definition of earnings in the Colorado statute. In addition, the plain meaning of the Colorado statute indicates that termination payments paid to the debtor are earnings because they are commissions for renewal premiums based on his personal services.

Still, the creditor contends that the termination payments are not earnings but constitute consideration for the Debtor's agreement not to compete with State Farm for one year. In *Geiss v. Northern Insurance Agency*, 153 N.W.2d 688 (N.D.1967) a former general agent for an insurance company, working for a different insurance company, sued the company for renewal commissions under a contract whereby renewal payments ceased if the former agent went to work for another insurance company within a specified time. The North Dakota

Supreme Court concluded that the contract was not in restraint of trade and held that "[T]he right to commissions on renewal premiums depended upon the contract of the parties (at p. 690)." The court pointed out that, under the contract, the former agent was not restrained from taking employment with another insurance company, he simply lost his right to commissions on renewals by doing so. *See also Masden v. Travelers' Ins. Co.*, 52 F.2d 75 (8th Cir. 1931). Mr. Marshburn's possible forfeiture of termination payments is not a prohibition against his engaging in competition but is only a limitation on his right to such payments if he engages in competition with State Farm. *Rochester Corporation v. Rochester*, 450 F.2d 118 (4th Cir. 1971), cited with approval in *Collister v. Bd. of Trustees*, 35 Colo.App. 241, 531 P.2d 989 (1975). Consequently, termination payments which may be paid to the Debtor after the filing of his Chapter 7 petition are not payments due him under a covenant not to compete but are earnings for services which are exempt under C.R.S. 1973, 13–54–104, as amended.

Provident Professional Fund, Inc. contends that if the termination payments are earnings, the exemption should be computed by adding to such payments any additional income earned by the Debtor from other sources. Even if this were done, the Debtor is still entitled to the exemption of 75 percent. Consequently, any aggregation of earnings would not result in any greater amount being available as an asset of the estate.

ORDERED that the termination payments due the Debtor under his contract with State Farm Insurance Company are property of the estate which are exempt under the provisions of C.R.S.1973, 13–54–104, as amended.

FURTHER ORDERED that the parties shall have ten days from the date this Order becomes final to file a written request for the withdrawal of all exhibits received in evidence, after which time the exhibits will be destroyed by the Deputy Clerk without further order of the Court.