**In re Ronald Ray KERVIN, a/k/a Ron Kervin f/d/b/a Kervin Agency f/d/b/a E–Z Save, Debtor.**

**Bankruptcy No. 81–00731.**

United States Bankruptcy Court, S. D. Alabama.

March 3, 1982.

Barry A. Friedman, Mobile, Ala., for trustee.

Gary A. Hudgins, Mobile, Ala., for debtor.

## ORDER ON OBJECTIONS TO EXEMPTIONS

WILL G. CAFFEY, Jr., Bankruptcy Judge:

This matter having come on for hearing upon the Objection of Roger E. Fritz, Trustee herein, to the debtor's claim of exemptions; due notice of hearing having been given; and evidence and arguments having been presented;

Now, therefore, the Court finds, concludes and orders as follows:

### FINDINGS OF FACT

The debtor filed a petition under Chapter 7 of the Bankruptcy Code on August 3, 1981. Roger E. Fritz is the duly appointed, qualified and acting Trustee of this estate.

In his amended Schedules B–2 and B–4, the debtor lists the following property valued as shown and claimed exempt:

| Type of Property | Value | Value Claimed Exempt |
|---|---|---|
| Checking and Savings Accounts | $ 71.10 | $ 71.10 |
| Kitchen Utensils, Small Appliances | 150.00 | 150.00 |
| Television | 50.00 | 50.00 |
| Hair Dryer | 10.00 | 10.00 |
| Clothing & Jewelry | 200.00 | 200.00 |
| 1976 Ford – claiming equity of $1.00 | 800.00 | 1.00 |

| Type of Property | Value | Value Claimed Exempt |
|---|---|---|
| 1972 Chevelle Malibu | 30.00 | 30.00 |
| Desk (office) | 25.00 | 25.00 |
| Claim filed against Bobby Mixon | 1,462.90 | 1,462.90 |
| Interest in insurance accounts | 1,000.00 | 1,000.00 |
| | $3,799.00 | $3,000.00 |

Numerous debts owed by the debtor were incurred prior to May 19, 1980 as reflected in his schedules.

The Debtor is an Agent for Mutual of Omaha Insurance Company and United Benefit Life Insurance Company (Health and Accident Division). He is paid solely on a commission basis for policies of life and accident and health insurance sold by him.

In addition to commissions received at the time an insurance policy is sold, the debtor is also entitled to receive commissions on policy renewals. Specifically, Paragraph II–C of the debtor's employment contract states:

Par. II–C. Service Fees on Renewal Premiums

On policies written by the Agent under this Contract or similar contracts, the Agent shall receive a service fee of 4% of renewal premiums paid to the Companies in the month following any month in which the Agent has at least 100 points of net issued new business, subject to paragraph IV–B.

Service fees withheld during any calendar year as a result of failure to attain minimum monthly production shall be paid if the Agent has at least 1,200 net issued new business points during that calendar year and is producing new business and providing policyowner service after the end of the calendar year.

Par. IV–B provided, inter alia, that compensation under the contract (except for deferred compensation payments, not involved here) was to be paid only while the agent was actively producing and servicing business thereunder.

The debtor has been receiving approximately $200.00 per month generated by commissions received on renewed policies.

During the last 2½ years the debtor has sold both life and health insurance policies, with life insurance policies accounting for approximately 2% of the sales and health insurance policies accounting for the remaining 98% of the sales.

At the present time the debtor spends 20%–30% of his time servicing the renewal accounts.

## CONCLUSIONS OF LAW

By Act No. 80–569, effective May 19, 1980, the Alabama Legislature "opted out" of the federal exemptions under the authority of Section 522(b)(1) of the Bankruptcy Code; therefore, the exemptions allowable in this case are controlled entirely by Alabama law. Code of Alabama, 1975, Section 6–10–11.

■ Under the facts of this case, as shown by the Schedules, the debtor was only entitled to have set apart, as exempt, personal property having a value of $1,000.00. Code of Alabama, 1975, Section 6–10–1; Code of Alabama, 1975, Section 6–10–6 (prior to 1980 amendment).

■ Although the written objection filed by the Trustee was based solely on the ground that the *value* of the items of personal property claimed as exempt were not correctly shown in the schedules filed by the debtor, he introduced no evidence to contradict the values therein set out. Therefore, the values placed thereon by the debtor are conclusive.

The total exemptions claimed by the debtor (exclusive of the insurance commissions) far exceed the exemptions of personal property allowable under Alabama law; but the Trustee made no objection based on that ground.

However, the parties by evidence and argument joined issue on the allowability, vel non, of the debtor's interest in the renewal insurance commissions earned by the debtor both before and after the filing of the petition in bankruptcy.

■ As to those commissions earned before the filing of the bankruptcy petition, there is no doubt that they are property of the estate and are exemptable up to the allowable limits of the State law. Bankruptcy Code, Section 541(a)(1).

The question of whether renewal insurance premiums earned subsequent to the filing of the bankruptcy petition are part of the estate in bankruptcy has been of concern to the courts under both the Bankruptcy Act and the Bankruptcy Code.

The test under the Bankruptcy Act was whether the right to the commissions was assignable or transferable or was an interest which could have been levied upon and sold under judicial process. Bankruptcy Act, Section 70(a)(5).

Depending upon the facts and contractual provisions in each case, the courts have held that:

(1) The renewal commissions were part of the bankruptcy estate. *In re Wright,* 157 F. 544 (2 Cir., 1907).

(2) The renewal commissions were not part of the bankruptcy estate, but were the property of the bankrupt. *In re Leibowitt,* 93 F.2d 333 (3 Cir., 1937), (cert. den. 303 U.S. 652, 58 S.Ct. 750, 82 L.Ed. 1113 (1938).

(3) The renewal commissions were property of the bankruptcy estate to the extent that they represented payment for past services; and the debtor should be compensated for future services needed to collect or realize such commissions. *In re Malloy,* 2 B.R. 674 (M.D.Fla., Bkrtcy., 1980).

The test under the Bankruptcy Code is considerably different. Under Section 541 the bankruptcy estate is comprised of all legal or equitable interests of the debtor in property as of the commencement of the case; and the proceeds and profits of or from property of the estate,

"*except such as are earnings from services performed by an individual debtor after the commencement of the case.*" (Emphasis supplied) Bankruptcy Code, Section 541(a)(1) and (6).

The scope of Section 541(a)(1) is broad and includes all kinds of property, including tangible or intangible property, causes of action and all other forms of property formerly covered by Section 70(a) of the Bankruptcy Act as well as property recovered by the Trustee under Section 542.

See: Legislature History—House Report No. 95–595, 95th Cong. 1st Sess. (1977), 367; and Senate Report No. 95–989, 95th Cong.2d Sess. (1978) 82, U.S.Code Cong. & Admin.News 1978, p. 5787.

However, even though the debtor's interest may be property of the estate, all proceeds or profits therefrom are excluded from "property of the estate" if they represent earnings from services performed by the debtor after the commencement of the case.

In the case of *In re Marshburn,* 5 B.R. 711, 6 B.C.D. 922 (Bkrtcy.D.Colo., 1980) Judge Patricia Ann Clark determined that "termination payments" due to an insurance salesman but unpaid at the time of the filing of his bankruptcy petition were property of the estate under Section 541 of the Bankruptcy Code. In that case, however, the insurance company had terminated its agreement with the debtor prior to bankruptcy; and he had earned his "termination payments" prior to that time, although only part of them had actually been paid over to him.

*In re Parker,* 9 B.R. 447, 7 B.C.D. 456 (M.D.Ga.Bkrtcy., 1981) which held that renewal commissions were property of the estate is likewise distinguishable on its facts. There the debtor had also terminated his employment contract prior to bankruptcy; and his right to renewal commissions was vested and not contingent on any future services.

■ In the case at bar, the debtor is still employed by the insurance company, is still selling insurance, and is "servicing" the old policies. His right to renewal premiums is contingent upon his generation of new business and his providing policyholder service.

The interest of the debtor in his contract of employment, and his rights thereunder,

became property of the estate under certain conditions, for instance as to those commissions which accrued and became vested in him prior to the filing of his petition in bankruptcy. However, his commissions on renewals which accrued after bankruptcy were excluded from property of the estate by virtue of Section 541(a)(6) of the Bankruptcy Code, since they were "earnings from services performed after the commencement of the case." He did not become entitled thereto until he had performed certain personal services such as the sale of new policies of insurance and "servicing" the old policies resulting in the payment of premiums thereon.

■ The evidence did not disclose what commissions, if any, had been earned prior to bankruptcy, but remained unpaid at that time. Therefore, the Trustee has failed to prove that the value placed thereon by the debtor was in error; and since his objection was not grounded on the excessiveness of the exemption under Alabama law, his objection as to the pre-bankruptcy commission is due to be overruled.

Since the renewal commissions earned after bankruptcy never became property of the estate, they did not have to qualify as "exemptions" to be removed therefrom; and the Trustee's objection as to them is likewise due to be overruled.

### ORDER

Now, therefore, it is ORDERED, ADJUDGED and DECREED that the Objection of Roger E. Fritz, Trustee, to the debtor's claim of exemptions be, and the same hereby is, OVERRULED.