In re John F. LAMB and Hannah Joy Lamb, Debtors.

**Alan R. MEDOR, Trustee, Plaintiff,**

**v.**

**John F. LAMB and Hannah Joy Lamb, Defendants.**

**Bankruptcy No. 84–00108.**
**Adv. No. 84–0094.**

United States Bankruptcy Court,
D. Vermont.

Feb. 6, 1985.

Alan R. Medor, Rutland, Vt., trustee, pro se.

David A. Otterman, Bradford, Vt., for debtors.

## MEMORANDUM OPINION

CHARLES J. MARRO, Bankruptcy Judge.

The matter is before the court on the objection of the trustee to the debtors' claim of exempt property, and on the complaint of the trustee for a turnover of property. The matter came on regularly for a hearing. From the testimony adduced at the trial and the records in the case, the following facts were established.

### FACTS

The debtors, John F. Lamb and Hannah Joy Lamb, filed for relief under chapter 7 of the Bankruptcy Code (Code) on June 17,

1984. On schedule B–4 accompanying the petition Mrs. Lamb claimed as exempt property certain payments made pursuant to the terms of a Milk Diversion Program contract the debtors had entered into with the United States Department of Agriculture. The contract, which Mr. Lamb executed but Mrs. Lamb did not execute, provides in relevant part:

THIS CONTRACT is entered into between the undersigned producer(s) (referred to as "producer"), and the ... Commodity Credit Corporation (referred to as "CCC") ...

. . . . .

The producer agrees ... [t]hat the quantity of milk marketed for commercial use during the period January 1, 1984 and March 31, 1985 shall be reduced [as the contract formula requires] ...

The CCC agrees to compensate the producer for reducing the marketings by ... mak[ing] quarterly payments [as the contract formula requires].

A preliminary payment after each of the first four quarters of the contract period shall be made to the producers on the unit [*unit* means the dairy cows, milk production facilities, and land used to produce milk] ... The final determination as to whether the producers on a unit are [entitled to retain quarterly payments] shall be made after March 31, 1985 ... If the producers on a unit have failed to reduce the total quantity of milk marketed for commercial use on the unit [or if there has been a sale, lease, or other transfer of any dairy cows which were included in the unit] the producers shall be ... [i]neligible for any payment under the Milk Diversion Program ...

. . . . .

If it is determined that the producer on a unit has not met the contract reduction for the contract period, or has not met any other provision of the contract [or] the regulations, the producer must refund to CCC any payments made by CCC ...

The trustee has moved for the turnover of roughly $3,375 comprising 80/90ths of the quarterly payment of the 90-day period ending 10 days after bankruptcy day. The debtors claim that such monies are not property of the estate, or if property of the estate, are exempt property.

## DISCUSSION

Code section 542 governing turnover motions against persons who are not custodians provides, "an entity, other than a custodian, in possession, in custody, or control, during the case, of property [of the estate] shall deliver to the trustee, and account for, such property or the value of such property ..." The issue presented is whether any part of the conditional quarterly payment for the period beginning 80 days before and ending 10 days after the commencement of this case is property of the estate under Code section 541. In relevant part, section 541 provides, "[p]roperty of the estate ... is comprised of ... all legal or equitable interests of the debtor in property as of the commencement of the case." Property of the estate includes "all property of the debtor, even that needed for a fresh start." House Report No. 595, 95th Cong., 1st Sess. 367–368 (1977); Senate Report No. 989, 95th Cong., 2d Sess. 82 (1978), U.S.Code Cong. & Admin.News 1978, p. 5787. The matter for determination is whether any part of the conditional payment made on June 30, 1985 was a choate chose in action on bankruptcy day, June 21, 1985. Alternatively stated, the issue is whether as of the commencement of the case the unissued preliminary payment was property of the United States.

The starting point in every case involving construction of a statute is the language itself. *Blue Chip Stamps v. Manor Drug Stores*, 421 U.S. 723, 756, 95 S.Ct. 1917, 1935, 44 L.Ed.2d 539 (1975). Unless otherwise defined in the Code, words appearing therein are to be accorded their ordinary meaning or common denotation. See, *e.g., In re Clark Technical Associates, Ltd.*, 9 B.R. 738, 3 C.B.C. 906, 908 (Bankr.D.Conn.1981). The term "proper-

ty" is not defined in the Code. As ordinarily employed, the term includes "every interest which anyone may have in anything that is the subject of ownership." *See Black's Law Dictionary* (5th ed. 1979). "Property" refers not to a particular material object but to the right and interest, or domination rightfully obtained, over such object. 63A *Am.Jur.*2d 228 (2d ed. 1984). The word signifies the sum of all the rights and powers incident to ownership. *Id.* at 229. "Ownership" is not defined in the Code. In common parlance and in legal acceptation, "ownership" means a collection of rights to use and enjoy property. *See, Black's Law Dictionary, supra.* The word is also commonly used to denote the right by which a thing belongs to someone in particular, the owner, to the exclusion of all other persons. *See* 63A *Am.Jur.*2d, *supra*, at 229. "Owner" is not defined in the Code. The ordinary meaning of the term is "a person in whom one or more interests are vested for his own benefit." *See Black's Law Dictionary, supra.* A contractual right to receive property, is the equivalent of a right to property, *United States v. Augspurger*, 452 F.Supp. 659 (T.C.W.D.N.Y.), *amended on other grounds*, 477 F.Supp. 94 (T.C.W.D.N.Y.), and the holder of the right is *pro tanto* the owner of the subject property, *id.*

 In the instant case, it was not argued that compliance with the milk reduction formula by the producer was a condition precedent to formation of a contract, and indeed the language of the agreement precludes serious argument on this point. Rather, the relationship of the CCC to the producer on bankruptcy day was that of a party doing business with the producer under an executory contract. An executory contract in bankruptcy is a contract under which "the obligations of both the bankrupt and the other party to the contract are so far unperformed that the failure of either to complete performance would constitute a material breach excusing the performance of the other." See Countryman, *Executory Contracts in Bankruptcy*, 57 Minn.L.Rev. 439, 460 (1973); *see also id.*, part 2, 58 Minn.L.Rev. 479 (1974).

Under the Bankruptcy Act, where an uncompleted contract between the debtor and another was of such a nature as to be based on personal service or skill, or personal trust or confidence, it was held that the debtor's interest in such contract did not pass to the estate. *Collier on Bankruptcy* (15th ed. 1979 as amended 1984) ¶ 541.09[3] at page 541–58.1 (Rel. 14–12/84) (citations omitted). On the other hand, where the contract had been completed before bankruptcy to the extent that nothing remained to be done but the payment of money, the claim became a chose in action that passed to the estate. *Id.* (citations omitted). The "performance completed" test has in large part been the measure applied in Code cases involving postpetition payment on executory contracts. *See, e.g., Matter of Haynes*, 679 F.2d 718 (7th Cir. 1982); *In re Hammond*, 35 B.R. 219 (Bankr.W.D.Ok.1983); *In re Nivens*, 22 B.R. 287 (Bankr.N.D.Tex.1982); *In re Lee*, 35 B.R. 663, 11 B.C.D. 337 (Bankr.N.D.Ohio 1983) (case wrongly decided in that debtors completed performance postpetition, *see id.* at 338); *In re Scanlon*, 10 B.R. 245, 7 B.C.D. 538 (Bankr.S.D.Cal.1981).

The court has found no liquidation cases treating Milk Diversion Program payments under the Code. On the facts, the producer's material obligations were (1) to effectuate the periodic reduction in milk production under the contract formula, and (2) to not transfer any dairy head out of the unit during the period. These obligations could not be fully performed until June 30, 1984. Applying the general rule to the facts, the producer had, prepetition, no choate chose in action, no property right in any proceeds represented by the June 30 payment. The fact of postpetition payment does not establish that as of June 21 the producer had completed performance nor that the producer then had an enforceable right to demand and receive the scheduled June 30 "advance preliminary payment," as the payment was designated by the Agricultural Stabilization and Conservation Service administrator supervising Milk Diversion Program payments to Vermont producers.

For the reason that the producer had no ownership rights in the June 30 payment prior to June 30, no part of the payment is property of the estate under Code section 541(a)(1). The trustee has sought the turnover of such payment proceeds as were property of the debtor as of the commencement of the case. For the reason that no part of the payment was property of the debtor as of the commencement of the case, the turnover motion under 541(a)(1) must fail.

For the reason that no part of the payment proceeds are subject to turnover under the trustee's motion, the trustee's objection to the claim of exemption as to payment proceeds is moot.