**In re David L. PALMER, Debtor.**

**George I. VOGEL, II, Trustee, Plaintiff,**

v.

**David L. PALMER, et uxor, Defendants.**

**Bankruptcy No. 7–85–00686–R. Adv. No. 7–85–0268.**

United States Bankruptcy Court, W.D. Virginia, Roanoke Division.

Feb. 4, 1986.

Gardner, Moss & Rocovich, Roanoke, Va., for David Palmer.

John P. Fishwick, Jr., Roanoke, Va., for Heidi Palmer.

George I. Vogel, II, Roanoke, Va., trustee/plaintiff.

Thomas P. Lloyd, Roanoke, Va., for Ruth Palmer.

MEMORANDUM OPINION AND ORDER

H. CLYDE PEARSON, Bankruptcy Judge.

The issue before the Court is whether a post-petition year-end bonus paid by the Debtor's employer is property of the estate to which the Trustee is entitled.

The facts appear as follows. The Debtor, David L. Palmer, an employee of Lincoln Electric Co., Inc., filed his Chapter 7 petition in this Court on June 18, 1985 and the Plaintiff, George I. Vogel, II, was appointed Trustee.

The Debtor received from his employer a bonus, less deductions, in the sum of $15,747.82 on December 7, 1985, a portion of which has been expended, and a balance of $3,470.35 remains deposited with the Trustee pending final order herein.

On December 13, 1985, the Trustee filed a Complaint initiating this adversary proceeding seeking a temporary restraining order requiring the Debtor to deliver the

funds to the Trustee to be held in escrow pending a decision by this Court whether the bonus constitutes property of the estate. By Order of this Court, subsequently appealed and affirmed by the United States District Court for the Western District of Virginia, the Debtor was directed to turn the funds over to his attorney pending hearing. A later Order of this Court designated the Trustee rather than the Debtor's attorney as the recipient of the funds.

The Trustee filed an amended Complaint seeking to add as a party-defendant Heidi Palmer, the Debtor's wife, to whom the Debtor gave the funds upon receipt. The amendment was allowed and, by further Order of this Court, the Defendants were directed to account to the Trustee for the funds and turn over such funds to him. The parties have stipulated that between December 7, 1985 and December 30, 1985, Mrs. Palmer expended $12,277.47 of the bonus, leaving a remaining balance of $3,470.35. Following hearing, Counsel were advised to submit stipulations and memoranda relating to their respective positions.

In determining whether the bonus awarded to the Debtor constitutes property of the estate, provisions of employer's written policies and procedures are relevant and the Employee Handbook and the Resolution of Lincoln Electric's Board of Directors, which are stipulated into the record, will be important factors for consideration. In relevant part, the Employee Manual provides that:

> "The bonus is not a gift, and it does not happen automatically. The bonus is paid at the discretion of the Company. It is sharing of the results of efficient operation on the basis of the contribution of each person to the success of the Company for that year."

An employee's share in the bonus depends on the use of his abilities and performance on the job as measured by merit ratings given twice a year for the periods ending April 30 and October 31.

To be eligible for the potential receipt of a bonus, the Handbook states that an employee must be a full-time worker on the payroll prior to November 1, the beginning of the Company's fiscal year. The resolution passed by Lincoln's Board of Directors with regard to the 1985 bonus provides that the employee must also meet one of four conditions. The condition relevant to this case is that "the employee must be in the employ of the Company at the time of payment of the bonus, namely, December 6, 1985." The amount, if any, to be paid to an employee "shall be determined by the Chief Executive Officer in his sole discretion upon consideration by him of various factors", including the average of the two merit ratings, the employee's regular base pay for the fiscal year—from November 1, 1984 to October 31, 1985—and "other factors measuring the employee's contribution to the success of the business." As the Handbook states, "bonus eligibility does not guarantee anyone a bonus", "and the Company President remains the final authority on the matter of eligibility."

Section 541(a)(1) provides that property of the estate includes "all legal or equitable interests of the Debtor in property as of the commencement of the case." The central question under § 541 is whether there exists a legal or equitable interest of the Debtor in property. *In re O'Brien*, 50 B.R. 67, 72 (Bankr.E.D.VA 1985). The scope of property of the estate is much broader under § 541 than under the Bankruptcy Act—*In re Boyd*, 11 B.R. 690 (Bankr.W. D.VA 1981)—and is intended to be all embracing. *In re Ryan*, 15 B.R. 514 (Bankr. D.MD 1981). It includes all kinds of property, wherever located, tangible or intangible, causes of action, and all other forms of property under former Section 70(a) of the Bankruptcy Act. H.R. No. 95–595, 95th Cong., 1st Sess. (1977), p. 367–68; U.S.Code & Admin.News 1978, p. 5787, 6323–6324.

Section 541 clearly establishes that the estate is created when the petition is filed. This date is the critical time as of which the property comprising the estate is to be determined and the rights of others connected with the proceeding adjusted. 4 *Collier on Bankruptcy*, ¶ 541.04 at 541–22

(15th Ed.1985); *Lockhart v. Garden City Bank & Trust Co.*, 116 F.2d 658 (2d Cir. 1940). Generally, property not then owned but subsequently acquired by the Debtor does not become property of the estate. *In re Dvoroznak*, 38 B.R. 178 (Bankr.E.D.NY 1984); *In re Newnum*, 2 B.R. 500 (Bankr. D.AZ 1980); 4 *Collier on Bankruptcy*, ¶ 541.05 at 541–24 (15th Ed.1985); *see, generally, Everett v. Judson*, 228 U.S. 474, 33 S.Ct. 568, 57 L.Ed. 927 (1913); *In re Jensen*, 200 F.2d 58 (7th Cir.1952), *cert. denied* 345 U.S. 926, 73 S.Ct. 785, 97 L.Ed. 1357 (1953).

■ Section 541(a)(6) further includes as property of the estate "all proceeds, product, offspring, rents, or profits of or from property of the estate, *except such as are earnings from services performed by an individual debtor after commencement of the case.*" (emphasis added) In enacting § 541(a)(6), Congress, by the plain wording of the statute, intended to exclude from property of the estate such sums which are a result of and attributable to services performed by the debtor subsequent to filing of the Bankruptcy petition. *See 4 Collier on Bankruptcy*, ¶ 541.19 at 541–93; 2 *Norton Bankruptcy Law & Practice*, ¶ 29.12. The decisive factor in determining whether sums of money received post-petition constitute property of the estate is whether such income accrues from post-petition services. *In re Sloan*, 32 B.R. 607 (Bankr.E. D.NY 1983); *see also In re Marshburn*, 5 B.R. 711, 713 (Bankr.D.CO 1980).

In reviewing the relevant case law regarding property of the estate, this Court has found no cases presenting facts involving post-petition award of a year-end bonus similar to the instant case.[1] However, Counsel for the Debtor and the Trustee rely upon cases considering whether other forms of income received post-petition constitute property of the estate and their analogy to the issue here.

Many of these cases involve payment of commissions to insurance salesmen. Although varying to some degree factually, an important consideration central to the holding in each case is whether the payments are conditioned upon activities required of the Debtor subsequent to filing of the petition. Several cases have recognized that where a debtor receives income post-petition and such sums are dependent upon the continued services of the debtor subsequent to the petition, the amounts do not constitute property of the estate. In *In re Selner*, 18 B.R. 420 (Bankr.S.D.FL 1982), the court found that receipt of renewal commissions by a debtor-insurance agent post-petition were not a vested right, but contingent upon the debtor's remaining as agent of record on the policy and the continued payment of the premiums by the insured. *Id.*, at 421. Accordingly, such payments were "sufficiently rooted in post-petition events so as to constitute after acquired property which would not pass to the Trustee as property of the estate." *Id.*

Similarly, in *In re Kervin*, 19 B.R. 190 (Bankr.S.D.AL 1982), the court found renewal premiums on insurance policies paid to the debtor-insurance salesman post-petition contingent on the salesman's generation of new business and providing service on the existing policies. The premiums were excluded from property of the estate by virtue of § 541(a)(6).

**1.** The Fourth Circuit has recently considered the topic of property of the estate with regard to several compensation plans. In *Hovis v. Wright*, 751 F.2d 714 (4th Cir.1985), the court addressed the issue of whether a public school teacher's payments into a retirement fund were exempt from inclusion in her Bankruptcy estate. In affirming the finding of the District Court that the contributions were exempt, the court expressly declined to pass upon the issue of whether the contributions fit the definition of property under § 541(a)(1). *Id.*, at 715. In *McLean v. Central States, Southeast and South-*

*west Areas Pension Fund*, 762 F.2d 1204 (4th Cir.1985), the court held that a debtor-pensioner's interest in a pension fund in the hands of the fund trustee that is subject to an enforceable transfer restriction is not property of the estate under § 541, but may become estate property in a Chapter 13 Plan once paid to the debtor under the terms of the trust since Chapter 13 debtors must commit their future earnings to the Plan. *See* 11 U.S.C. § 1306(a)(6); 2 *Norton Bankruptcy Law & Practice*, ¶ 29.12, n. 1. To the extent these cases present different issues, they are inapplicable to the instant case.

In reaching its decision, the court in *Kervin* distinguished the cases of *In re Marshburn, supra,* and *In re Parker,* 9 B.R. 447 (Bankr.M.D.GA 1981), relied upon by the Trustee in this case to support his position that the post-petition bonus constitutes property of the estate. In *Parker,* the Bankruptcy Court found the commissions paid to the debtor-insurance salesman post-petition to be property of the estate because the right to the renewal commissions was vested and in no way conditioned upon future service. 9 B.R. 449. Similarly, in *Marshburn,* the Bankruptcy Court found termination payments received by an insurance salesman subsequent to filing of the Bankruptcy petition were property of the estate. In *Marshburn,* the fact that the debtor was required to refrain from competing for five months under a non-competition clause (*i.e.,* provide further service by *not* acting) did not change the result. The court viewed such "service" after filing the Bankruptcy petition to be "minimal when compared to the substantive services rendered by the debtor in selling the policies prior to filing the petition." *Id.,* at 714. In the case of *In re Sloan,* 32 B.R. 607 (Bankr.E.D.NY 1983), another Bankruptcy Court has similarly found that a finder's fee paid post-petition was property of the estate since the debtor had actually fulfilled all its obligations necessary to receive the money pre-petition.

Given this background, we cannot say that the case before this Court is analogous to the decisions in *Parker* and *Marshburn* where the debtors essentially fulfilled all of their obligations prior to the filing of the Bankruptcy petitions. On its facts, this case is more analogous to the *Selner* and *Kervin* decisions finding the post-petition amounts to be excluded from property of the estate. As in those cases, the Debtor in this case had to engage in activities subsequent to filing of the Bankruptcy petition which entitled him to receive the bonus. In fact, the Debtor was required to provide an even greater amount of services post-petition than in these cases, thereby strengthening his position that the bonus does not constitute property of the estate. First, the Debtor had to be employed by Lincoln Electric on December 6, 1985. As provided in the Board Resolution, the Debtor's receipt of the bonus was conditioned in part on his employment on this date, almost six months after the filing of his Bankruptcy petition. Had the Debtor terminated his employment with the Company subsequent to the filing of his petition, he would not automatically have been entitled to the bonus. The Board resolution clearly states "in the event of the employee's severance from the Company between August 1, 1985 and the time of payment of the bonus ... such severance would have to be approved by the Chief Executive Officer of the Company or his designate, in order to maintain bonus eligibility of the employee." Thus, continued employment with the Company was an important prerequisite for eligibility.

Second, to be eligible to receive a bonus at all, the Debtor had to perform his job satisfactorily. The Employee Handbook clearly states that an employee's share in the bonus, if paid, depends on the use of his abilities and performance on the job. The quality of the Debtor's work through the Company's fiscal year ending October 31, 1985 (four months after filing of the Debtor's petition) had to be of a level such that he was found to have contributed to the success of the Company. Had the Debtor's work for the period subsequent to the filing of his petition been substandard, this would have been reflected in the merit rating given for the period ending October 31. As a factor in determining award of the bonus, a poor rating would have seriously affected his eligibility.

Finally, one of the most important factors in this case is that the Debtor was not entitled to receive the bonus until the Chief Executive Officer of Lincoln Electric made such a determination. As the Employee Manual states, award of the bonus is purely discretionary. This Court does not ignore the fact, stressed by the Trustee at oral argument, that for the past fifty years Lincoln Electric has awarded a bonus annually. However, when the Debtor filed

his petition on June 18, 1985, he did not have an entitlement to a bonus. As of that date, the Debtor had nothing more than a potential almost six months later of receiving an award *if* the Chief Executive Officer made that decision upon finding the Debtor's work merited such an award. The Debtor was not entitled to receive any sums until this determination was made on December 7, 1985. When his petition was filed, he could not have sued in a state court proceeding to recover the bonus. *See, e.g., In re Harter,* 10 B.R. 272 (Bankr. N.D.IN 1981) (debtor did not have the ability to proceed to a court of law to enforce his interest in receiving future payments at the present time); *Tennessee Valley Authority v. Kinzer,* 142 F.2d 833 (6th Cir. 1944) (at time of Bankruptcy filing, debtor-employee had no interest in contributions which he could enforce or transfer).

The Trustee has characterized the bonus as deferred compensation. He contends that the bonus is not a small amount similar to a Christmas bonus, but represents a sizeable portion of the Debtor's total income for the year. He suggests that had the Chief Executive Officer of Lincoln decided not to award the bonus for 1985 as the Company had in the past, employees would certainly have filed lawsuits seeking award of the bonus.[2]

The Defendants dispute the Trustee's characterization of the award, but we do not find this matter important to our decision. However, assuming *arguendo* the Trustee's premise, the filing of lawsuits by Lincoln employees in no way suggests success on the merits. It is difficult to ignore the plain wording of the Employee Handbook stating that the bonus is not a gift, it is not awarded automatically, and it is not guaranteed. The bonus is paid at the discretion of the Company. It appears that the provisions of the Handbook were drafted with sound business practices and the deliberate intention of insulating Lincoln Electric from exactly the type of potential employee claims which the Trustee suggests. Under provisions of the Handbook, Lincoln Electric has no responsibility to its employees for the bonus until it is declared; the employees have no right to the sum until that event occurs.

Moreover, it is for this reason that we reject the Trustee's suggested approach, adopted by other courts, of apportioning the bonus between an amount attributable to the Debtor's pre-petition services as property of the estate, and a portion attributable to post petition services as excluded. *See In re Ryerson,* 739 F.2d 1423 (9th Cir.1984), affirming 30 B.R. 541 (Bankr. App. 9th Cir.1983) (case remanded for determination of what portion of earnings attributable to services performed by debtor which would be property of the estate); *In re Kervin, supra,* at 193. At first blush, this approach appears to be an acceptable balance of the equities. The Debtor filed his petition slightly over half-way through the Company's fiscal year, with one merit rating before and one after that time. The approach might be appropriate had the Debtor been entitled to the bonus or some portion thereof when filing his petition. However, as outlined above, the Debtor did not become entitled to the amount until many months later.

2. In support of his position, the Trustee cites *Barger v. General Electric Co.,* 599 F.Supp. 1154 (W.D.VA 1984), for the proposition that under Virginia law, the employee handbook and board resolutions vest in an employee certain contractual rights, enforceable in a court of law. However, a closer reading of the *Barger* case does not suggest such a broad interpretation.

In *Barger,* a former employee of General Electric brought suit against the company for breach of an employment contract. The employee alleged that his layoff violated the terms of his employment contract governed by provisions of an employee relations manual and other policies and procedures. General Electric filed a motion to dismiss, which the court treated as a motion for summary judgment.

In ruling on the motion, the Fourth Circuit recognized that other jurisdictions have held that provisions of an employee handbook can constitute enforceable contractual provisions. *See Id.,* at 1163–4, n. 8. However, the Fourth Circuit did not rule on whether the provisions in question were enforceable. It merely stated that the provisions raised a factual dispute which must be resolved by the trier of fact. *Id.,* at 1164. As such, the motion for summary judgment should be denied.

In reaching this decision, attention is drawn to the recent case of *In re Lamb*, 47 B.R. 79 (Bankr.D.VT 1985). In *Lamb*, cash payments made post-petition to the debtors, milk producers, under the terms of a milk diversion program with the Department of Agriculture, were held to not be property of the estate. The court determined that the debtors had no choate chose in action nor any property right in the proceeds until their obligations were fully performed ten days after their petition was filed. *Id.*, at 83. As in *Lamb*, it is difficult to find that as of the commencement of the case, the Debtor had any enforceable property interest—legal, equitable, contingent, or otherwise. He did not have any right to payment when filing his petition, and only became entitled to the sum upon review of his work performance six months later and a determination that it merited such an award.

Although the scope of property of the estate under the Bankruptcy Code is broad, the legislative history to § 541 provides that the Section "is not intended to expand the debtor's rights against others more than they exist at the commencement of the case." H.R.Rep. No. 95–595, 95th Cong., 1st Sess. 367 (1977); S.Rep. No. 95–989, 95th Cong., 2d Sess. 82 (1978), U.S. Code Cong. & Admin.News 1978, pp. 5868, 6323. The Debtor in this instance did not have any right to the bonus when his case commenced. We find that the bonus payment is "sufficiently rooted in post-petition events so as to constitute after-acquired property which would not pass to the Trustee as property of the estate." *See Selner, supra.*

Accordingly, it is

ADJUDGED and ORDERED

that the Debtor's year-end bonus payment does not constitute property of the estate under § 541. The portion of the funds remaining is released to the Defendants, and this adversary proceeding is DISMISSED and CLOSED.

Service of a copy of this Memorandum Opinion and Order shall be made by mail to the Debtor/Defendants; to GARDNER,

MOSS & ROCOVICH, Counsel for David Palmer; John P. Fishwick, Jr., Esquire, Counsel for Heidi Palmer; Thomas P. Lloyd, Esquire, Counsel for Ruth Palmer; and to George I. Vogel, II, Esquire, Trustee/Plaintiff.