**In re Gerald Erwin KESSEL and Gail Elizabeth Kessel, Debtors.**

**Gail E. KESSEL, Plaintiff,**

v.

**GUARANTY BANK & TRUST, Defendant,**

v.

**Gerald E. KESSEL, Third–Party Defendant.**

**Bankruptcy No. 88 B 17602 A.**
**Adv. No. 89 J 0218.**

United States Bankruptcy Court, D. Colorado.

Dec. 4, 1989.

James H. Hahn, Gelt, Fleishman & Sterling, P.C., Denver, Colo., for plaintiff and third-party defendant.

Garry R. Appel, Rothgerber, Appel, Powers & Johnson, Denver, Colo., for defendant.

ORDER

ROLAND J. BRUMBAUGH, Bankruptcy Judge.

THIS MATTER comes before the Court upon Cross Motions for Summary Judg-

ment filed the Plaintiff and the Defendant. Both Plaintiff and Defendant assert that there are no genuine issues of material fact in dispute and that summary judgment is appropriate.

The facts, as shown by the pleadings and the submissions with the Motions, are as follows.

1. Gerald Kessel, husband of the Plaintiff, executed a promissory note in the sum of $400,000.00 in favor of the Defendant on September 26, 1984. Plaintiff did not obligate herself on this Note.

2. On that same date, Plaintiff executed a Deed of Trust on the family residence (which was titled in her sole name) designating the Defendant as Beneficiary. This Deed of Trust was given as additional security for the Promissory Note of her husband.

3. On September 8, 1985, March 26, 1986, and July 30, 1987, Gerald Kessel and the Defendant entered into modification agreements on the Promissory note where the term of the Note was extended and/or the interest rate was increased. Plaintiff denies she had any knowledge of these modifications. The affidavits establish that the Defendant and Gerald Kessel did not inform Plaintiff of these modifications.

4. In March, 1988, the Defendant commenced a lawsuit against Gerald Kessel in Denver District Court seeking authority to foreclose upon the Deed of Trust under Colo.R.Civ.P., Rule 120 and for judgment on the Note.

5. On or about November 18, 1988, Plaintiff moved to intervene in that state court suit and filed an Answer and Counterclaim, a Motion for Temporary Restraining Order and Preliminary Injunction and brief in support of the Motion.

6. In her Answer and Counterclaim Plaintiff alleged, *inter alia,* the following:
   A. The plaintiff adopted "... the answer and affirmative defenses as alleged by Gerald E. Kessel in his answer and counterclaim, and incorporates the same by reference as if fully set forth herein."
   B. "... [Gerald] Kessel answered the Bank's [Defendant herein] Complaint denying default on the Note and counterclaimed alleging that the Bank acted in bad faith and did not act fairly with Kessel. Kessel alleges that the indebtedness claimed by the Bank was incurred as a result of the Bank's breach of its duty of good faith and fair dealing, breach of its fiduciary duty, and its negligent misrepresentation. Kessel also alleges a counterclaim for his damages resulting from the Bank's wrongful actions, which damages far exceed the amount claimed due by the Bank."
   C. "... If Kessel should prevail at trial, and the Court finds no indebtedness is due the Bank, the Bank would have no right to foreclose Gail's [Plaintiff herein] Deed of Trust given to secure such indebtedness. The Bank's collateral will not be in jeopardy pending trial. The Residence is being adequately protected by the Kessels. The property has a first mortgage on it, which is being serviced by the Kessels. The property is being preserved by the Kessels. The property will not go away and will be in existence when the trial on the merits has been decided."

7. In her motion for injunctive relief, Plaintiff alleged, *inter alia,* the following:
   A. *"The injunction will preserve the status quo.* At this point, the status quo is that a trial has been set, the Bank has a perfected lien on the Residence, and the Residence is being preserved and maintained by Gail. Should this motion be denied, the status quo will be altered in that the Residence will be gone forever."
   B. "Certainly *the balance of equities favors the granting of the injunction.* The residence and the Bank's lien will still be in place at the end of the trial and should Plaintiff win on the merits of the case, it will then be allowed to foreclose."

8. In her brief in support of the motion for injunctive relief, Plaintiff asserted, *inter alia,* the following:
   A. "In 1984, Kessel obtained a $400,000 line of credit from the Bank in order to operate his livestock business. The loan was secured, in part, by Gail's Deed of

Trust on the Residence. The loan was modified on September 8, 1985, March 26, 1986 and July 30, 1987."

B. "... Gail should be allowed to retain her Residence pending adjudication of this matter on its merits. This is the status quo. The collateral is real property. It is not going anywhere. It will be equally available to the Bank following the trial, should the Bank prevail."

C. "The residence is not going any place. It will be here a year form now (with a reduced balance on the first mortgage). At present, all of the Bank's interests are being protected. The collateral is being protected, in that the Kessels are living in the Residence and maintaining it. Therefore, the Bank is not being damaged in any way."

9. On December 5, 1988, the state court held a hearing and at the conclusion found that a default had occurred which entitled the Defendant to foreclose under the Deed of Trust and granted the Defendant's Rule 120 motion. The state court also granted Plaintiff's motion for a preliminary injunction, and stayed the foreclosure sale upon the posting of a $50,000.00 bond.

10. The bond was not posted, and on December 23, 1988, the Kessels filed their Chapter 11 bankruptcy petition.

Plaintiff argues that she is a surety or guarantor of her husband's debt to the Defendant and that the modifications in the loan agreement between the Defendant and her husband subsequent to the Deed of Trust, which occurred without her consent, operated as a release of her surety obligations, thus voiding the Deed of Trust.

The Defendant counters that the doctrines of Judicial Estoppel, Res Judicata and Collateral Estoppel bar Plaintiff's claims. In addition, Defendant asserts that Plaintiff's actions in the state court proceeding effected a ratification by the Plaintiff.

### JUDICIAL ESTOPPEL

■ The doctrine of Judicial estoppel provides that a party is precluded as a matter of law from adopting a legal position which conflicts with an earlier position taken in the same or related litigation. *In re Gaye–Joy Corp., Inc.*, 84 B.R. 235 (Bankr.M.D.Fla.1988). This doctrine has long been recognized in Colorado. *See, Peters v. Peters*, 82 Colo. 503, 261 P. 874 (1927) (party cannot contend in one proceeding that judgment is final and in another that it is not); *New England Elec. Co. v. Matz*, 27 Colo.App. 30, 145 P. 1002 (1915) (when Plaintiff proved note against bankrupt corporation, he is judicially estopped to claim in subsequent proceeding that President lacked authority to execute note); and *Rosebud Mining & Milling Co. v. Hughes*, 21 Colo.App. 247, 121 P. 674 (1912) (an action against a lawyer for professional negligence admits his employment and Plaintiff could not deny employment on counterclaim for fees). At least one Federal Circuit Court of Appeals has determined that federal law controls the application of judicial estoppel, since it relates to the protection of the integrity of the federal judicial process. *See, Allen v. Zurich Ins. Co.*, 667 F.2d 1162 (1982), footnote 4, p. 1167.

The *Allen* case, *supra*, states that:

The circumstances under which judicial estoppel may appropriately be invoked are probably not reducible to any general formulation of principle, but they may be found where neither collateral estoppel nor equitable estoppel, *see Scarano v. Central R. Co.*, 203 F.2d [510] at 512–13, nor any requirements of election of remedies or theories, *see Eads Hide & Wool Co. v. Merrill*, 252 F.2d 80, 84 (10th Cir.1958), would apply. Its essential function and justification is to prevent the use of "intentionally self-contradiction ... as a means of obtaining unfair advantage in a forum provided for suitors seeking justice." *Scarano v. Central R. Co.*, 203 F.2d at 513. 667 F.2d 1162, 1166–67.

Whether the Colorado court rule or the federal rule applies in this case is of no moment because the doctrine under either is the same.

■ Plaintiff argues that before the doctrine can be applied, it must be shown that (1) the inconsistent position first asserted

must have been successfully maintained; (2) a judgment must have been rendered; (3) the positions must be clearly inconsistent; (4) the parties and questions must be the same; (5) the party claiming estoppel must have been misled and have changed his position; and (6) it must appear unjust to one party to permit the other to change. Plaintiff cites *Ellis v. Arkansas Louisiana Gas Co.*, 609 F.2d 436 (10th Cir.1979) in support of her argument. However, the *Ellis* case is easily distinguishable in that the case explicitly states that it is interpreting Oklahoma law and that State's doctrine of "preclusion." When closely examined, the required elements of "preclusion" in Oklahoma are nothing more than the elements of "collateral estoppel", not judicial estoppel. Under the federal rule and the Colorado rule, there is no requirement for reliance or damage to the party asserting the doctrine necessary for its application.

 As shown by the Plaintiff's state court pleadings, motions, and brief, she, in order to obtain the preliminary injunction to stop the foreclosure sale, assured the state court that the Defendant's lien was perfected and that if the Defendant prevailed in the law suit, the property would be there to satisfy Defendant's claim. Now, in a different proceeding and a different forum Plaintiff asserts that the lien is invalid. Plaintiff argues that her use of the word "perfected" meant only that *initially* the Deed of Trust was a valid and enforceable lien, and that she was not asserting in the state court that the Deed of Trust was *presently* valid and enforceable. This Court disagrees. "Perfect" or "perfected" means complete; finished; executed; *enforceable; without defect; merchantable; marketable.* [Emphasis added]. *Black's Law Dictionary* 1295 (4th ed. 1951). Having made the assertion that the lien was perfected on November 18, 1988, in state court, Plaintiff is now judicially estopped from taking the position that the Deed of Trust was released on September 8, 1985, March 26, 1986, or July 30, 1987. It is, therefore,

ORDERED that the Motion for Summary Judgment filed by the Plaintiff is denied and the Motion for Summary Judgment filed by the Defendant is granted and the Complaint herein is dismissed.

FURTHER ORDERED that the Defendant's Third–Party Complaint is dismissed as moot.

FURTHER ORDERED, ADJUDGED AND DECREED that the Deed of Trust in favor of the Defendant which was recorded at Reception No. 027969 on October 8, 1984, in the Office of the Denver County Clerk is a valid, enforceable lien on the property of Plaintiff.

FURTHER ORDERED that judgment shall enter in accordance with this Order.