**In re Floris Herman FUCHS,**
**SSN 467 60 2504, Debtor.**

**Bankruptcy No. 95 13053 DEC.**

United States Bankruptcy Court,
D. Colorado.

Dec. 6, 1995.

---

Eldon Silverman, Elrod, Katz, Preeo, Look, Moison & Silverman, Denver, Colorado, for Debtor.

Jeffrey Weinman, Weinman, Cohen & Niebrugge, P.C., Denver, Colorado, for Harvey Sender, the Chapter 7 Trustee.

Richard Breithaupt, Woods, Kinney & Breithaupt, P.C., Englewood, Colorado, for Creditor, Mildred H. Fuchs.

James Kaplan, Machol, Johannes & Vanstrom, P.C., Denver, Colorado, for Creditor, State of Colorado.

### ORDER GRANTING EXEMPTION

DONALD E. CORDOVA, Bankruptcy Judge.

THIS MATTER is before the Court on the debtor's claimed exemption for earnings under Colo.Rev.Stat. § 13–54–104(1)(b) (1994). Harvey Sender, the duly appointed Chapter 7 Trustee ("Trustee"), and the State of Colorado ("State") have objected to the claimed exemption under 11 U.S.C. § 522(*l*) and FRBP 4003(b). The matter came on for hearing on October 10, 1995 and November 6, 1995. The Court heard and considered the testimony and legal arguments presented by the parties, reviewed the admitted exhibits, and makes the following findings of fact and conclusions of law.

### FACTS

The debtor listed in his schedules $600,-000.00 of "earnings" which he claims as exempt property under Colorado state law as permitted by 11 USC § 522(b). When a debtor files a petition in bankruptcy under Chapter 7, all of his property becomes property of the bankruptcy estate, subject to distribution to creditors, except that which is exempt. *See, Taylor v. Freeland & Kronz,* 503 U.S. 638, 112 S.Ct. 1644, 118 L.Ed.2d 280 (1992). American Income Life ("AIL") placed $160,000.00 of the "earnings" in the registry of the United States District Court in connection with an interpleader action, Case # 94–S–1753, naming as defendants the debtor, the debtor's ex-wife Mildred, Floris Fuchs, Inc., two corporations, and the State of Colorado. (AIL's Ex. 18). The remainder of the claimed "earnings" are future commissions which have not yet been paid to the debtor. AIL's representative, Joyce Lillard, testified by deposition that these future commissions have an estimated present value of $433,255.00. Debtor seeks to exempt 75% of the "earnings" under Colo.Rev.Stat. § 13–54–104(2)(a)(I) (1994). The Trustee and the State claim (1) the debtor is not entitled to an exemption because the "earnings" belong to the debtor's two solely owned corporations, (2) the debtor is judicially and equitably estopped from claiming an exemption on the "earnings" he treated as corporate income, and (3) the future commissions are not "earnings" entitled to an exemption under State law.

The debtor, Floris Fuchs, was an independent insurance agent for AIL from 1968 to mid–1988. He has not performed any services for that company since he executed a termination agreement (AIL's Ex. 15) in May

1988. All of his agency contracts with AIL list him as an individual (AIL's Ex. 14), and all commissions were paid to him as such. (AIL's Ex. 16). AIL executives testified that AIL had no corporate agents because it was their company's policy not to do business with corporate agents. Despite this policy, Mr. Fuchs formed two corporations in 1980 and 1984, Floris Fuchs, Inc. and Fuchs, Inc., naming himself as the sole shareholder in each.

In 1982 Mr. Fuchs asked clerical employees of AIL to change the tax identification number on certain individual accounts to a corporate tax identification number for Floris Fuchs, Inc.. He made the same request in 1985 with respect to Fuchs, Inc. This was done without the knowledge or consent of AIL's officers. As a result of the switch of tax identification numbers, only 10% of his income was attributed to his individual tax identification number and reflected on his 1099 tax forms, the remainder was shown on the 1099 forms bearing corporate tax identification numbers. He used this ruse to hide 90% of his income, estimated to be one million dollars. He failed to report the "corporate income" on his federal and state tax returns from 1988 through 1994. He also admitted that he did not file corporate tax returns for those same years.

The beginning of Mr. Fuchs' financial woes occurred with his 1988 separation from Mildred, his wife of 37 years. He and Mildred were divorced in 1990 and signed a Separation Agreement dated March 21, 1990. (AIL's Ex. 19). As part of the settlement, Mildred was to receive $1,500.00 per month as maintenance and a promissory note for $88,000.00, both secured by Fuchs' renewal income from AIL. The security agreement was properly recorded and AIL was duly notified. Also, Fuchs was awarded the AIL renewal income and undertook to pay a $500,000.00 debt he owed to AIL. That debt was reduced to $218,961.00 as of July 24, 1992, and to $123,243.00 by March 10, 1993, and ultimately repaid by applying Fuchs' renewal income to the indebtedness. (Debtor's Ex. 28).

After Fuchs' repaid his debt to AIL, the company intended to honor Mildred's securi-

ty agreement by paying Fuchs' renewal income to her. (AIL's Ex. 20, 21) Although Fuchs had defaulted on his obligation to Mildred, he refused to allow AIL to pay her in accord with the security agreement or in response to writs of garnishment she had served on AIL. Fuchs claimed, for the first time, that the renewal income belonged to his corporations. AIL had previously been served with continuing writs of garnishment from the State of Colorado in July 1992 to satisfy a judgment against Fuchs for $160,939.00, followed by a writ from the District Court in McLellan County, Texas for a $182,970.00 judgment in favor of Guarantee Trust Life Insurance Company in March 1993. Based on Fuchs' claim of corporate ownership, the competing claims for the renewals and acting on the advice of their attorney, AIL filed an interpleader action in the United States District Court for the District of Colorado on October 12, 1994 and deposited the excess renewal commissions with the court. (AIL's Ex. 18).

Fuchs and Floris Fuchs, Inc. responded in their pleadings that the funds were owned by Floris Fuchs, Inc., a Colorado corporation, based on Fuchs' assignment of the commissions to the corporation. Alternatively, as an affirmative defense, Fuchs claimed entitlement to an exemption under state and federal law, if the funds were found to be his.

The State and the other defendants, except Mildred, maintained that the funds belonged to Fuchs, claiming the corporation to be his *alter ego,* and that the corporation's interest in the commissions was fraudulently created with the intent to defraud creditors. Mildred, on the other hand, claimed a priority security interest in the renewal commissions and sought to enforce several default judgments arising from Fuchs' non-payment of maintenance. (AIL's Ex. 24). Fuchs filed his petition in bankruptcy on April 3, 1995, seeking protection under Chapter 7 of the Bankruptcy Code.

### MERITS

 The first issue the Court must decide is whether future commissions based on renewal of insurance policies are "earnings" as defined by Colorado statute. Colo.Rev.Stat.

§ 13–54–104(1)(b)(I)(A) (1994) defines "earnings" as "compensation paid or payable for personal services, whether denominated as wages ... salary, *commission,* or bonus; ..." [emphasis added]. Subsection (2)(a)(I) sets a limit of 25% of "disposable earnings" subject to garnishment. "Disposable earnings" are defined as "that part of the earnings of any individual remaining after the deduction from those earnings of any amounts required by law to be withheld.... In the case of an order for the support of a ... former spouse, ... "disposable earnings" includes moneys voluntarily deposited in tax-deferred compensation funds." Colo.Rev. Stat. § 13–54–104(1)(a) (1994).

Fuchs relies on *In re Marshburn,* 5 B.R. 711 (Bankr.D.Colo.1980) to support his claim that future renewal commissions are "earnings" subject to the Colorado statutory exemption. In *Marshburn,* the debtor was entitled to receive renewal premiums payable to him post-petition based on insurance policies he had sold pre-petition. The court found these renewal payments had been earned prior to the filing of the bankruptcy petition and property of the estate, pursuant to 11 U.S.C. § 541(a)(1). *Id.,* 5 B.R. at 714. The Court reasoned that the services qualifying the debtor for the post-petition payments had already been performed and anything left to do was minimal. *Id.*

Similarly, in the case at bar, Fuchs' termination agreement provides that AIL will continue to pay or credit his renewals to him as long as he complies with the non-competition clauses of the agreement. (AIL's Ex. 15) In reality, he is not required to perform any further services to receive the payments. Fuchs' receipt of future payments is subject to two conditions precedent: (1) the renewal of the policy and, (2) the payment of the premium, neither of which is guaranteed. However, the court is satisfied that the future commissions qualify as "earnings" because they are "compensation ... payable for personal services". Colo.Rev.Stat. § 13–54–104(1)(b)(I)(A) (1994). Therefore, the Court finds that all renewal commissions presently held in the registry of the United States District Court and those due Fuchs under his termination agreement with AIL

are "earnings" which, if owned by Fuchs, would entitle him to the statutory exemption under Colo.Rev.Stat. § 13–54–104(1)(b)(I)(A) (1994).

Secondly, the Court must address the debtor's assertion that the funds are his individual earnings despite the fact that he treated these funds as corporate income, had them reported on the Form 1099's issued to his corporations, effectively concealed the income from the taxing authorities for several years, failed to report the income on his individual or corporate tax returns, shielded the funds from his ex-wife and his other creditors by claiming corporate ownership, and ultimately caused AIL to file an interpleader action on July 27, 1994 to determine ownership of the funds. (AIL's Ex. 18). Fuchs persisted in claiming corporate ownership of these funds until April 3, 1995, the day he filed his voluntary petition in bankruptcy (AIL Ex. 26). This change in position came after he filed a motion to amend the Scheduling Order in the interpleader action claiming individual ownership of the funds. (AIL's Ex. 25) Also, on that same day, he filed his 1994 federal income tax return (AIL's Ex. 35) and did *not* include the income reported on the corporate Form 1099's. (emphasis added). He did not file an amended tax return which included the corporate income as individual income until October 2, 1995 (AIL's Ex. 42), the same day he signed responses to Requests For Admissions (AIL's Ex. 50).

The Court recognizes that in some circumstances, courts have determined a corporation to be an *alter ego* of an individual debtor, and have held that property held by the corporation actually belongs to the individual debtor. *See, e.g., Matter of Velis,* 123 B.R. 497, 509 (D.N.J.1991) (Where shareholders' disregard for the corporate entity made it a mere instrumentality for their individual transactions, where there is such a unity of ownership that separate personalities of the corporation and its owners do not exist, and where recognizing the corporate entity would promote injustice or protect fraud, "the corporate entity will be deemed a fiction and disregarded."); *Matter of Commonweal, Inc.,* 171 B.R. 405, 410 (Bankr.M.D.Fla.1994) ("[A]

corporation's separate identity will be disregarded if it is found to be a 'mere instrumentality' of another individual created to mislead or exists for fraudulent purposes."); *Shaw v. Commissioner,* 59 T.C. 375, 383–385, 1972 WL 2545 (1972) (Noting "[w]hen applying the income tax laws, regard must be had to matters of substance and not mere form", the Tax Court found that, considering the whole record, the petitioner and not his corporations earned the insurance commission income under dispute.). The Court further recognizes that the instant case presents many of the factors which persuaded the courts in *Velis, Commonweal,* and *Shaw* to disregard the corporate entity and find that the corporations were mere *alter egos* of their controlling individuals. However, the Court cannot conclude that the debtor's previous assertions that the funds belonged to the corporations had no validity unless it addresses a third issue—whether concepts of judicial or equitable estoppel prevent the debtor from arguing that the funds belong to him rather than to the corporations.

■■■ Generally, the Tenth Circuit does not favor the doctrine of judicial estoppel. *United States v. 49.01 Acres of Land,* 802 F.2d 387, 390 (10th Cir.1986). However, where state law recognizes judicial estoppel, the doctrine may prevent a debtor from claiming an exemption which conflicts with earlier assertions. *Osborn v. Durant Bank & Trust Co. (In re Osborn),* 24 F.3d 1199, 1208–1209 (10th Cir.1994). In Colorado, courts have recognized and applied the doctrine of judicial estoppel. *See, In re Kessel,* 108 B.R. 281, 283 (Bankr.D.Colo.1989), and Colorado cases cited therein. Therefore, this Court may consider the application of judicial estoppel, which requires a showing of the following elements: (1) the inconsistent position must have been successfully maintained; (2) a judgment must have been rendered; (3) the positions must have been clearly inconsistent; (4) the parties and questions must be the same; and (5) it must appear unjust to one party to permit the other party to change positions. *In re Kessel, supra,* 108 B.R. at 283–284.

The instant case obviously does not fit these criteria. The interpleader action in which the debtor asserted that the funds belonged to the corporations had not progressed to final judgment because the bankruptcy filing interrupted the process. Also, the debtor has changed his position in that action. There is therefore no way to evaluate the success of the debtor's previous position. Further, while the debtor's positions clearly contradicted one another, the parties and issues are not identical. The interpleader action, brought by AIL, names the debtor, his ex-wife, the corporations, and the State of Colorado as defendants, and the issue presented therein is to whom renewal commissions are to be paid. The matter before this Court is the trustee's objection to the debtor's claimed exemption of the renewal commissions. The two actions simply share one question: the ownership of the funds. Addressing the final element, the equity and justice of allowing the change in position, leads the Court to consider the separate issue of equitable estoppel.

■■■ Equitable estoppel is a well recognized doctrine in this district. *See, In re Durham,* 935 F.2d 1160 (10th Cir.1991). Equitable estoppel prevents a party from denying a set of facts that he has previously asserted to be true, if the party asserting estoppel relied on the earlier assertion and would be prejudiced by its repudiation. *Lampl v. Smith,* 169 B.R. 432, 434 (D.Colo., 1994), *citing* 1B J. Moore J. Lucas, and T. Currier, *Moore's Federal Practice* § 0.405[8] at p. III–53. In order to show equitable estoppel, an objecting party must demonstrate: (1) the party to be estopped must know the facts; (2) that party must intend his conduct to be acted on or must act in such a way that the opposing party has the right to believe he so intended; (3) the party seeking estoppel must be ignorant of the facts; and (4) the party seeking estoppel reasonably and detrimentally relied on the conduct. *In re Grynberg,* 142 B.R. 415, 420 (D.Colo.1991); *In re Burkey Lumber Co. of Grand Junction, Colo.,* 149 B.R. 177, 180 (Bankr.D.Colo.1993).

The Trustee and the State of Colorado have clearly proven the first three criteria of equitable estoppel. Mr. Fuchs, an experienced businessman, certainly knew the facts

and ramifications of corporate versus individual ownership of the funds. He obviously intended his assertion to be acted upon, as he tried to persuade the court in the interpleader action to rule that the funds belonged to the corporations. AIL and the State could not know that he would suddenly change his position to assert individual ownership on the same day he filed his petition in bankruptcy.

■ The court must therefore decide whether the Trustee and the State relied to their detriment upon the debtor's contention that the funds belonged to the corporations. Mr. Fuchs used his corporations as a method for avoiding tax and support liability, and it would be inequitable to allow him to switch positions whenever it best suited him, to prevent the funds from being used to pay his lawful debts in the Chapter 7 case. However, the Trustee can prove no reliance or prejudice, since Fuchs' position has remained the same since immediately before he filed his petition in bankruptcy. The Trustee was not a party in the interpleader action nor was he a pre-petition creditor of the debtor. Therefore, as to the Trustee, equitable estoppel does not apply.

■ Whether the State detrimentally relied on Fuchs' representations is somewhat more problematical. In order to prevail the State must show that it not only relied on the previous position but, that it would be prejudiced by its repudiation. *Lampl v. Smith, supra,* 169 B.R. at 434. During the interpleader action, the State and Fuchs both took positions opposite to those they now assert, the State arguing that Fuchs owned the funds and Fuchs claiming his corporation owned the funds. The State now asserts that Fuchs treated the funds as corporate funds and should be estopped from claiming otherwise. Prior to the interpleader action, the State attempted to execute on its judgment against Fuchs and was unable to do so, not because Fuchs claimed the funds were corporate, but because AIL and Mildred had superior security interests. If the funds truly belong to the corporation, the State could not execute against them because they have no judgment against the corporation. In the alternative, if the funds belong to Fuchs, the State could only execute against them sub-

ject to state statutory exemption laws and priority of liens, absent some equitable exception to the statutory exemption law. Therefore, the State has not relied to its detriment on Fuchs' claim that these were corporate funds, and cannot meet the fourth requirement for equitable estoppel.

■ Additionally, the court feels constrained by the language found in *Guidry v. Sheet Metal Workers Nat. Pension Fund,* 493 U.S. 365, 376, 110 S.Ct. 680, 687, 107 L.Ed.2d 782 (1990), admonishing that exceptions to statutory policy are to be made by the legislature, not the courts. "As a general matter, courts should be loath to announce equitable exceptions to legislative requirements or prohibitions that are unqualified by the statutory text." *Id.* The Supreme Court surmised that restrictions on garnishment were reflective of some broad social policies which take precedence over doing equity between the parties. "It makes little sense to adopt such a policy and then refuse enforcement whenever enforcement appears inequitable." *Id.,* 493 U.S. at 377, 110 S.Ct. at 687.

Were such refusal condoned by the Court, there are many reasons why this court would favor creating an equitable exception to the statutory exemption found in the Colorado law, not the least of which is Mr. Fuchs' lack of credibility. His testimony given to explain his use of the corporate tax identification numbers, his failure to report the income shown on his corporate tax Form 1099's, and his motivation for amending his tax returns is simply incredible. His conduct was not the result of an honest error or lack of advice but, to the contrary, was deliberate, willful and fraudulent. He set out to deceive the taxing authorities, his ex-wife, his employer, his creditors and he continued his deception in the United States District Court, and to a lesser extent by his testimony in the Bankruptcy Court. He changed his position about ownership of these funds only when all other avenues were closed to him.

■ The Supreme Court acknowledged that a central purpose of the Bankruptcy Code is to provide debtors with a "fresh start" expressing the caveat that it is limited to "the honest but unfortunate debt-

or." *Grogan v. Garner*, 498 U.S. 279, 286–287, 111 S.Ct. 654, 659, 112 L.Ed.2d 755 (1991). This limitation does not conflict with the policy pertaining to allowance of exemptions. The creditors and the Trustee are free to file complaints to deny the debtor a discharge or to except certain debts from discharge in accordance with Code provisions.

The Court therefore holds that the doctrine of equitable estoppel is not applicable, and concludes that the funds are property of the bankruptcy estate subject to an exemption as "earnings" under the Colorado statutory exemption provisions.

For these reasons, it is

ORDERED that the debtor's claim of exemption is GRANTED.