**In the Matter of Terry Eugene JONES, Bankrupt.**

**No. 4–69–Bky 929 (O).**

United States District Court,
D. Minnesota,
Fourth Division.

March 29, 1971.

Thomas G. Lovett, Jr., Thomson, Lovett, Wahlfors & Moran, Minneapolis, Minn., Trustee.

Charles J. Hauenstein (of counsel for Legal Aid Society of Mpls.), Arthur D. Walsh, Minneapolis, Minn., for bankrupt.

MEMORANDUM

LARSON, District Judge.

On September 8, 1969, Terry Eugene Jones filed a voluntary petition in bankruptcy. Adjudication in bankruptcy occurred at that time by operation of law. The bankrupt was employed as a wage earner throughout the calendar year 1969. There was no significant variation in earnings during each pay period. Jones' wife, who did not file bankruptcy, had no income and did not contribute withholding or any other form of tax prepayment.

After January 1, 1970, Jones and his wife filed a joint Federal income tax return for the calendar year 1969. Their two children were claimed as tax exemptions. Deductions were itemized but no extraordinary deductible amounts were attributable to any individual member of the family.

The withholding from Jones' wages in 1969 satisfied the tax with an excess of $145.00 refundable. Pursuant to its internal procedures, the Internal Revenue Service sent the refund check to the trustee in bankruptcy.

The trustee claimed $99.31 of that amount representing the portion of excess ascribable to withholding occurring prior to the date of adjudication. The formula used by the trustee in the calculation was a ratio of the 250 days of the year which had passed at the time of adjudication to the 365 days in a year. The Referee in Bankruptcy found that because the bankrupt had a fairly even level of earnings and withholding, the simple ratio formula utilized accurately measured the excess withholding attributable to the preadjudication period. The Referee's conclusions can be summarized as follows:

1. The bankrupt's right to excess withholding during calendar year 1969 was an assignable property interest within § 70(a) (5) of the Bankruptcy Act and as such passed to the trustee.

2. Since it is property within § 70(a) (5) the trustee is entitled to an appropriate proportion of the refund.

3. The simple ratio proposed by the trustee was an equitable method of ascertaining the portion of excess withholding ascribable to the preadjudication period.

4. The trustee was therefore entitled to retain $99.31 out of the refund, with the balance being remitted to the bankrupt.

The bankrupt in the instant proceeding attacks all four conclusions of the Referee as erroneous. The bankrupt makes two alternative arguments. Initially it is maintained that the right to any refund that might exist at the end of the taxable year is not property within the Bankruptcy Act at the time the petition is filed during the taxable year. As a result, the bankrupt contends that he is entitled to the entire refund. If that issue is resolved against him, the bankrupt suggests in the alternative that the method of apportioning his interest and that of the trustee is erroneous and an alternative method of computation must be substituted therefor.

## THE RIGHT TO A REFUND OF EXCESS WITHHOLDING AS A PROPERTY INTEREST WITHIN SECTION 70 OF THE BANKRUPTCY ACT—

Section 70(a) (11 U.S.C. § 110) of the Bankruptcy Act provides insofar as relevant:

"The trustee of the estate of a bankrupt and his successor or successors, if any, upon his or their appointment and qualification, shall in turn be vested by operation of law with the title of the bankrupt as of the date of the filing of the petition initiating a proceeding under this Act . . . to all of the following kinds of property wherever located. . . .

(5) property, including rights of action, which prior to the filing of the petition he could by any means have transferred or which might have been levied upon and sold under judicial process against him, or otherwise seized, impounded, or sequestered. . . . "

■ According to the foregoing provision of the Bankruptcy Act the trustee in bankruptcy will, upon filing of the petition, be vested with whatever interest the bankrupt has [1] in property (or a cause of action) that is either transferrable by the bankrupt or subject to legal process by the bankrupt's creditors. The bankrupt's position is that his interest in the refund has not yet matured and is so inchoate that it cannot be considered "property" or "a right of action" under bankruptcy law.

The Court is aware of the contingent and uncertain nature of such an interest. The size, or for that matter, the very existence of a refundable excess cannot be ascertained until the close of the taxable year. Both may be substantially affected by tax events which occur *after* adjudication in bankruptcy.

Bankrupt has offered for the Court's consideration a whole series of situations which demonstrate various factors which may operate to vary the amount of refund. Included in the list are an increase in the number of exemptions during the taxable year, fluctuating income, and the ability of a cash basis taxpayer to defer payment of deductible expenses into another year. These go, however, not to the existence or nonexistence of an interest which might be

---

1. Bank of Marin v. England, 385 U.S. 99, 87 S.Ct. 274, 17 L.Ed.2d 197 (1966); Union Trust Co. of Maryland v. Townshend, 101 F.2d 903 (4th Cir. 1939), cert. denied Townshend v. Union Trust Co. of Maryland, 307 U.S. 646, 59 S.Ct. 1044, 83 L.Ed. 1526; Hummel v. Equitable Life Assur. Soc., 151 F.2d 994 (7th Cir. 1946); Mulhern v. Albin, 163 F.2d 41 (8th Cir. 1947); In Re Woodruff, 272 F.2d 696 (7th Cir. 1960), cert. denied Sparrenberger v. Nat'l City Bank of Evansville, Ind., 362 U.S. 940, 80 S.Ct. 806, 4 L.Ed.2d 770; San Diego Wholesale Credit Men's Ass'n v. Garner, 325 F.2d 862 (9th Cir. 1963).

classified as a property right, but simply reflect the difficulty of ascertaining the value of the interest.

The general trend has been toward making the term property within the Bankruptcy Act broader and inclusive of a larger range of interests.[2] The Supreme Court most recently considered the rights of the trustee to the bankrupt's tax claims in Segal v. Rochelle.[3] The Segal Brothers, Gerald and Sam, were partners in a cotton products business. In September of 1961 the brothers and the partnership filed voluntary petitions in bankruptcy. After the close of the calendar year 1961 the two brothers filed claims for and were awarded loss carryback tax refunds. All the losses occurred in 1961 prior to the filing of bankruptcy and were carried back to 1959 and 1960. The trustee in bankruptcy claimed the refunds as assets. He prevailed through the Fifth Circuit Court of Appeals despite contrary holdings in other Circuits.[4]

The bankrupts in *Segal* made substantially the same argument to the Supreme Court that is being made to this Court by the bankrupt in the instant case. They argued that no claim for a refund arising out of a loss carryback could be made until the end of the calendar year 1961. Furthermore, they maintained, earnings by the bankrupt after the petition might diminish or eliminate the loss carryback. The Supreme Court in affirming the Court of Appeals dismissed those arguments. It said:

> "The main thrust of § 70a(5) is to secure for creditors everything of value the bankrupt may possess in alienable or leviable form when he files his petition. To this end the term 'property' has been construed most generous-

ly and an interest is not outside its reach because it is novel or contingent or because enjoyment must be postponed. . . ."[5]

> "[P]ostponed enjoyment does not disqualify an interest as 'property.' That earnings by the bankrupt after filing the petition might diminish or eliminate the loss-carryback refund claim does further qualify the interest, but we have already noted that contingency in the abstract is no bar and the actual risk that the refund claims may be erased is quite far from a certainty."[6]

The Supreme Court recognized, however, that there are some limitations on the concept of property that grow out of some other policies contained within the Bankruptcy Act.

> "[O]ne purpose which is highly prominent and is relevant in this case is to leave the bankrupt free after the date of his petition to accumulate new wealth in the future. Accordingly, future wages of the bankrupt do not constitute 'property' at the time of bankruptcy nor, analogously, does an intended bequest to him or a promised gift—even though state law might permit all of these to be alienated in advance."[7]

In the case of the Segals the Court felt that the refund claim was "sufficiently rooted in the pre-bankruptcy past and so little entangled with the bankrupts' ability to make an unencumbered fresh start that it should be regarded as 'property' under § 70(a) (5)."[8] However, the import of the language quoted in the two excerpts immediately above become apparent in the very recent Per Curiam decision in Lines v. Frederick.[9]

2. Segal v. Rochelle, 382 U.S. 375, 379, 86 S.Ct. 511, 15 L.Ed.2d 428 (1966) ; In Re Goodson, 208 F.Supp. 837, 842 (D.C. S.D.Cal.1962).

3. 382 U.S. 375, 86 S.Ct. 511, 15 L.Ed.2d 428 (1966).

4. Fornier v. Rosenblum, 318 F.2d 525 (1st Cir. 1963) ; In Re Sussman, 289 F. 2d 76 (3rd Cir. 1961).

5. 382 U.S. at 379, 86 S.Ct. at 515.

6. Id. at 380, 86 S.Ct. at 515.

7. Id. at 379–380, 86 S.Ct. at 515.

8. Id. at 380, 86 S.Ct. at 515.

9. 400 U.S. 18, 91 S.Ct. 113, 27 L.Ed.2d 124 (1970).

The issue presented in *Lines* was whether the vacation pay of a wage earner which was earned but not paid at the time of filing the petition in bankruptcy passes to the trustee as property under § 70(a) (5) of the Bankruptcy Act. The facts in the case are "easier" than in *Segal* or the instant case. The vacation pay in *Lines* was earned in discreet increments, apparently one day of vacation for each month's work.[10] As a result, the portion of vacation pay attributable to the prebankruptcy period can be easily identified. Furthermore, once the vacation pay is accrued, there is no apparent postadjudication event other than taking a vacation which can vary the amount that accrued due to preadjudication employment. The interrelationship between postadjudication tax events and the amount properly apportioned to the preadjudication period which characterizes both *Segal* and the instant case apparently did not exist in *Lines*. Yet, despite the ease with which preadjudication vacation pay could be identified, the Supreme Court determined that it was not property within the meaning of § 70(a) (5).

The disposition turned on a determination by the Supreme Court that the function of the vacation pay was to provide support for bankrupts and their families during vacation periods or in the event of a layoff. The bankrupts in *Lines* were wage earners whose only source of income was their earnings. The Court felt that since the vacation pay was a part of wages it constituted "a specialized type of property presenting distinct problems in our economic system."[11] To compel a wage earning bankrupt to take a vacation without pay or forego a vacation altogether was not, in the opinion of the Court, achieving the fresh opportunity in life without the burden of pre-existing debt that the Bankruptcy Act is supposed to offer.[12]

■ Read together, *Segal* and *Lines* indicate that although the term property will be given a very broad meaning, exceptions will be carved out where the effect of defining a res as property is a conflict with other policy considerations in the Bankruptcy Act. In the instant case it has been admitted that the interest in the withholding refund is inchoate. However, it is still a clearly definable interest. Furthermore, there is a rough justice in allocating to the benefit of the bankrupt's creditors monies accumulated prior to adjudication. The fact that bankrupt's realization of the interest may be postponed is not a factor to be considered. This was made clear in *Segal*.

■ The other factor to be considered is whether determining the refund to be property conflicts with other policy considerations of the Bankruptcy Act. It is not clear to this Court that wages withheld prior to adjudication are so entwined with the bankrupt's future wage earning activity that they should receive the same treatment as future wages. This is especially true of that portion of

---

10. 400 U.S. at 21, 91 S.Ct. at 113 (Harlan, J., dissenting, accepted as true the uncontested representation to this effect made by the bankrupt in his petition for review of the Referee's Order.)

11. 400 U.S. at 20, 91 S.Ct. at 114. Citing language from Sniadach v. Family Finance Corp., 395 U.S. 337, 340, 89 S.Ct. 1820, 23 L.Ed.2d 349 (1969).

12. The bankrupt Frederick could collect his accrued vacation pay only upon final termination of his employment or during the annual period when his employer shut down operations. Thus loss of his accrued vacation pay could precipitate another financial crises for him. He would be laid off his job for the duration of the annual shutdown period without any source of income.

Harris, the other bankrupt, was under a conventional voluntary vacation plan. In his case the policy argument is not as clear. Loss of his accrued vacation pay would merely preclude him from taking a vacation or limit him to what vacation he accrued after adjudication in bankruptcy. Apparently the Supreme Court's judgment was that for wage earners the right to a vacation already earned is inextricably entwined with his wage earning activity. As a result, earned vacation, like future wages, will not be considered property under the Bankruptcy Act.

the withholding that can be allocated to preadjudication earnings. The decision by the Referee that the refund constituted property within § 70(a) (5) has a rational basis in the law.[13] It is not clearly erroneous and must therefore be affirmed.

## ASSIGNABILITY OF BANKRUPT'S INTEREST

It has been suggested by the bankrupt that whatever interest he possessed in the refund was not assignable or subject to creditors and hence excluded from treatment as property by the terms of § 70(a) (5). It goes without saying that creditors could not attach the withheld fund. However, Minnesota law permits equitable assignments. Hence it is possible under Minnesota law to assign the proceeds of a contract even if the contract itself is not assignable.[14] Although there are no cases under Minnesota law directly in point, there is no indication that the bankrupt could not assign his potential refund to a third party. Admittedly the assignment might have questionable value because of its inchoate and indefinite nature. The test, however, is not what a third party will give in consideration for the assignment, but whether such an assignment regardless of its value is possible. The Referee's conclusion is clearly consonant with present Minnesota law and therefore must be affirmed.

## APPROPRIATENESS OF THE APPORTIONMENT FORMULA

The Court now faces the alternative argument made by the bankrupt. He maintains that even though the refund is property, the simple ratio method of apportionment utilized by the Referee is erroneous. The bankrupt asserts that since only he and not his wife filed bankruptcy, that the apportionment should take into account whatever social policy underlies the joint return and adjust the apportionment accordingly. He suggests the ratio proposed by the trustee should not be applied to the entire refund. It should be applied instead to one-half of the difference between the actual refund and whatever refund (or deficiency) the bankrupt would have been entitled to had be filed a single rather than a joint return.

The Bankruptcy Court sits as a court of equity. The Referee in the exercise of his equity jurisdiction has determined that the formula proposed by the trustee provides a fair allocation of the tax refund. The bankrupt and his wife chose to file a joint return. Having so decided, the bankrupt should not be permitted to rely upon a result which would have obtained had he chosen another course of action. In addition, in the instant case the wife had no income of her own. Thus there is no problem of compelling the non-bankrupt wife to contribute part of her earnings to a fund for the benefit of her husband's creditors. Furthermore, the bankrupt's level of earnings were fairly constant throughout the entire year and there were no substantial deductions allocable to any one family member. As a result, no postadjudication tax event can be identified which would have significantly affected the size of the refund. The formula adopted seems clearly equitable and the Referee's judgment must therefore be affirmed.[15]

This Court is fully cognizant that the equities may vary from case to case and that apportionment may be difficult in some cases. The Referee in Bankruptcy, however, is convinced that allowance can

---

13. The same conclusion was reached on an identical fact situation by the Court in In Re Goodson, 208 F.Supp. 837 (D.C. S.D.Cal.1962). However, since that case predated the *Segal* and *Lines* decisions of the Supreme Court, this Court felt a brief discussion of the latter two cases was appropriate.

14. Wilkie v. Becker, 268 Minn. 262, 128 N.W.2d 704 (1964).

15. In Re Buchholtz, 259 F.Supp. 31 (D. Minn.1966).

be made in the distribution as the facts in each case warrant.[16] This Court is satisfied to accept the Referee's judgment in that matter. The Referee's Conclusions of Law and Order must be affirmed in all respects.

The Court appreciates the assistance of Charles J. Hauenstein, a lawyer in private practice, who represented the bankrupt and the Legal Aid Society of Minneapolis in this matter.

---

16. Take the following as an example: "A" is adjudicated a bankrupt in July. The following September he incurs some large unforeseen medical expenses. Clearly, if a substantial portion of his tax refund is attributable to the postadjudication medical deductions, this would militate toward an apportionment reflecting that fact. Furthermore, the "fresh start" policy would be served by providing "A" with a fund to help defray the financial consequences of a postadjudication catastrophe which in large part created the fund in the first place.