**In re Peter Jerome MALLOY, Jr., Debtor.**

**Bankruptcy No. 79–649–BK–J–GP.**

United States Bankruptcy Court,
M. D. Florida,
Jacksonville Division.

Feb. 13, 1980.

Abdo Yazgi, East Norwich, N. Y., for debtor.

Victor E. Raymos, Jacksonville, Fla. Trustee.

## ORDER ON TRUSTEE'S OBJECTION TO CLAIM OF EXEMPTIONS

GEORGE L. PROCTOR, Bankruptcy Judge.

The debtor was, during the relevant pre-petition time period, an insurance sales agent whose remuneration came in the form of commissions. When he sold a policy, he would receive part of the commission immediately and the remainder would be paid to him over a number of years providing the policyholder renewed the policy. The debtor claimed approximately $500 of these renewal commissions as exempt, and the trustee has objected.

The threshold question is whether the renewal commissions are "property" within the meaning of Section 70(a) of the Bankruptcy Act. Section 70(a)(5) of the Act vests in the trustee "property, including rights of action, which prior to the filing of the petition he could by any means have transferred or which might have been levied upon and sold under judicial process against him, or otherwise seized, impounded, or sequestered . . . ." In construing this section, the United States Supreme Court has said

> The main thrust of Section 70(a)(5) is to secure for creditors everything of value the bankrupt may possess in alienable or leviable form when he files his petition. To this end the term "property" has been construed most generously and an interest is not outside its reach because it is novel or contingent or because enjoyment must be postponed.

*Segal v. Rochelle*, 382 U.S. 375, 379, 86 S.Ct. 511, 515, 15 L.Ed.2d 428 (1966). The Court recognized that this expansive definition of property must coexist with the Act's goal of giving debtors a fresh start:

> one purpose which is highly prominent and is relevant in this case is to leave the bankrupt free after the date of his petition to accumulate new wealth in the future. Accordingly, future wages of the bankrupt do not constitute "property" at the time of bankruptcy . . . . .

*Id.* at 379 to 380, 86 S.Ct. at 515. The ultimate test, therefore, is whether the asset in question is "sufficiently rooted in the pre-bankruptcy past and [to be] so little entangled with the bankrupts' ability to make an unencumbered fresh start that it should be regarded as 'property' under Section 70(a)(5)." *Id.* see *In re Jones*, 337 F.Supp. 620 (D.Minn.1971).

The debtor argues that these renewal commissions are paid by the insurance company in part as compensation for the agent's efforts in servicing a policy once it has been sold and thus are akin to future wages. He testified that he spends, on the average, one day a week servicing outstanding policies.

The question before the Court was confronted directly in *In re Wright*, 157 F. 544 (2nd Cir. 1907). The case may be dated, but its logic is still compelling. There, the question certified to the district court was

> whether the interest of the bankrupt in the commissions on renewal premiums accrued since the bankruptcy, pursuant to the contract between him and such life insurance company, was property which, at the time of such bankruptcy, he could

by any means have transferred without the consent of the company, or which might have been levied upon and sold under judicial process against him, and also without such consent.

*Id.* at 545. The district court answered this question in the affirmative.

On appeal, the bankrupt argued that his interest was not property that could be transferred because the contract between himself and the insurance company was based upon trust and confidence and it was not assignable without the consent of the company, and that the collection of renewal commissions required his future services. Also, the contract was terminable by the company if he failed to comply with its conditions or performed unsatisfactorily. Termination of the contract would end his interest in the commissions.

■ The Second Circuit affirmed, pointing to the difference between an absolute assignment of a contract and the assignment of rights under a contract. The bankrupt could not delegate his performance but was free to assign future income that he might receive.[1] The court also distinguished between assignability and marketability. The contingent nature of the commissions might make the interest that could be transferred to the trustee of little value, but it would not render the interest unassignable. Conceding that the bankrupt could not be compelled to render any future services on behalf of the estate, the court concluded by suggesting that, to the extent the bankrupt's future personal services were needed to collect the renewal commissions, the Referee had the authority to fix a fair basis of compensation.

The debtor also argues that the unpaid renewal commissions are exempt from process by virtue of Florida's garnishment protection statute. Section 222.11 provides

No writ of attachment or garnishment or other process shall issue from any of the courts of this state to attach or delay the payment of any money or other thing due to any person who is the head of a family residing in this state when the money or other thing is due for the personal labor or services of such person.

He urges that the sums are due for his personal labor or services and thus do not pass to the trustee.

The trustee responds that the statute does not apply to independent contractors. *Patten Package Co. v. Houser*, 102 Fla. 603, 136 So. 353 (1931). He relies on an unreported case from this district that holds that fees due an attorney for prepetition services are not within the statute. *In re Lefevre*, Case No. 68–97–Orl–BK–P (November 14, 1969). Any other conclusion, he contends, would render the accounts receivable of every professional man who earns his living by the rendering of personal services exempt.

■ At the hearing, the debtor testified that his prepetition status was that of an independent contractor. On that basis, along with his brief description of his relationship with the insurance companies, he is not entitled to the benefits of the state statute. His unpaid renewal commissions may not be as negotiable or marketable as an attorney's accounts receivable, but, under the above discussed analysis, are transferrable. Therefore, the right to the renewal commissions become property of the estate to the extent that they represent payment for past services.

■ However, this Court sits as a court which is mandated to apply equitable principles. 28 U.S.C. Sec. 1481; *In re Jones, supra.* The *Wright* case recognizes that the debtor's future services may be needed to give full value to these rights and authorizes the bankruptcy judge to compensate him for such services. "This court is fully cognizant that the equities may vary from case to case and an apportionment may be

---

1. An assignment of renewal commissions is valid in bankruptcy. See *Wiley v. Public Investors Life Insurance Co.*, 498 F.2d 101 (5th Cir. 1974), in which the rights of an insurance company to set off renewal commissions due the bankrupt were held to be paramount to the rights of the trustee, where the bankrupt had received an advance against his future renewal commissions.

difficult in some cases." *In re Jones*, 337 F.Supp. at 625.

Debtor testified that he spent as much as one day a week, or one-fifth of his time, servicing outstanding policies. He estimated that the renewal commissions expected totaled approximately $500, which is the sum the trustee demanded in his objection.

Wherefore, it is ORDERED as follows:

1. The debtor shall, within ten (10) days, account to the court by letter with a copy to the trustee for all renewal commissions not already paid prior to the date of the petition;

2. The debtor shall turn over to the trustee 80 per cent of each such commission he collects. He may retain for himself the remaining 20 per cent, up to the sum of $100. All monies in excess of the $100 shall be turned over to the trustee in toto.