**In re James Alan HARRISON, Debtor.**

**Bankruptcy No. 96–35373–BKC–PGH.**

United States Bankruptcy Court,
S.D. Florida.

Oct. 9, 1997.

Stuart A. Young, West Palm Beach, FL, for Debtor.

Patricia A. Dzikowski, Lauderhill, FL, Trustee.

*MEMORANDUM DECISION AND OR-*
*DER SUSTAINING TRUSTEE'S OB-*
*JECTION TO DEBTOR'S AMENDED*
*CLAIM OF EXEMPT PROPERTY*

PAUL HYMAN, Jr., Bankruptcy Judge.

**THIS MATTER** came before the Court on August 6, 1997, for an evidentiary hearing upon the Trustee's Objection to the Debtor's Amended Claim of Exempt Property. The issue before the Court is whether the Debtor's claim entitlement to receive a payment

from his professional association under an Amended Deferred Wage Agreement is exempt as "earnings" pursuant to Florida Statute § 222.11. The Court having heard the testimony, having examined the evidence presented, observed the candor and demeanor of the witnesses, considered the arguments of counsel, and being otherwise fully advised in the premises, hereby enters the following Findings of Fact and Conclusions of Law.

## BACKGROUND

The Debtor, Dr. James Alan Harrison (the "Debtor"), filed a voluntary petition under Chapter 7 of the Bankruptcy Code on December 30, 1996. The Debtor, a dentist, claimed the following property as exempt: interest in wages due with a scheduled value of zero, interest in his professional association, Harrison and Martel, D.D.S., P.A. (the "Professional Association") with a scheduled value of zero, and a UCC–1 lien on all equipment and accounts receivable of the Professional Association securing an interest in deferred wages (the "Deferred Wages") with a scheduled value of Forty Thousand and 00/100 ($40,000.00) Dollars. The Deferred Wages due and the UCC–1 lien securing the interest in the Deferred Wages were claimed as exempt pursuant to Florida Statute § 222.11. The Debtor's interest in the Professional Association was also claimed as exempt pursuant to Article 10, Section 4, of the Florida Constitution.

Pursuant to the Trustee's timely filed objection to the Debtor's exemption, this Court ruled that the Debtor's interest in the Professional Association as well as the UCC–1 lien securing the Deferred Wages were property of the estate. Because the Deferred Wages had a scheduled value of zero, the Court deferred ruling on the Debtor's exemption of the Deferred Wages until the Debtor placed a value thereon.

Subsequently, on May 19, 1997, the Debtor filed an amendment to his Schedule C wherein the Deferred Wages were valued at Seventy Five Thousand and 00/100 ($75,000.00) Dollars. The Deferred Wages are due to the Debtor from his Professional Association under an Amended Deferred Wage Agreement

(the "Wage Agreement"). The Trustee filed a timely objection to the Debtor's amended claim of exemption of the Deferred Wages.

The Wage Agreement was drafted by the Professional Association's corporate attorney, Todd Kennedy, and was subsequently amended effective January 1, 1995. The amendment involved the handwritten inclusion of the term Seventy Five Thousand and 00/1000 ($75,000.00) Dollars in the Wage Agreement's section entitled Deferred Wages Payment. Both the Debtor and Mr. Kennedy testified that the amount of $75,000.00 was arrived at by averaging the Debtor's past salary of approximately $150,000.00 per year and then dividing that figure by two since it took the Professional Association approximately six months to collect payment for the services provided by the Debtor. Mr. Kennedy further testified that the purpose of the Wage Agreement was to provide for orderly dissolution of the value, including but not limited to the physical assets, of the Professional Association in the event that the Professional Association should dissolve.

The Debtor also testified that the amount of payment required under the Wage Agreement fluctuated depending upon the value of the Professional Association and the amount of assets, including accounts receivable, which had been accumulated. This testimony, however, is not supported by the language contained in the relevant sections of the Wage Agreement. Sections four, five, and six of the Wage Agreement provides that the terms are fixed at a set figure of $75,000.00 and do not fluctuate.

The Debtor also executed an employment agreement with the Professional Association entitled Amended Professional Employment Agreement Between James A. Harrison, D.D.S. and Harrison and Martel, D.D.S., P.A. (The "Employment Agreement"). In recital number three entitled "Compensation During Employment," the Employment Agreement provides that "the Company shall pay employee for his professional and executive services an annual compensation as set forth on attached Exhibit A..." Exhibit A, although attached to the agreement, was left blank. Nonetheless, the Debtor testified that both he and the only other shareholder in the

Professional Association, Dr. Victor Martel, received regular compensation for their dentistry services in the form of paychecks every two weeks. Testimony established that the net amount of these paychecks was generally approximately Four Thousand and 00/100 ($4,000.00) Dollars. However, the Debtor also testified that this figure was not regular and was subject to the current amount of cash on hand. Specifically, the Debtor testified that, occasionally, these amounts were not paid if the Professional Association did not have sufficient cash at that time. Alternatively, when the Professional Association had excess cash, the shareholders took larger than their usual regular salary paychecks. The determination as to the amount of their compensation was made by and among the Debtor and Dr. Martel.

The Trustee's Objection to the Debtor's Amended Claim of Exempt Property asserts that the payment under the Wage Agreement does not constitute earnings for personal services or labor within the meaning of Florida Statute § 222.11, but rather constitutes a liquidation, division and return of the Debtor's equity interest and assets in the Professional Association. The Trustee further maintains that the payment under the Wage Agreement, even if comprised of accounts receivable, are merely assets of the Professional Association and receipt of such is not earnings, but is more appropriately classified as an increase in the Debtor's wealth through the ownership of stock.

In response, it is the Debtor's position that he was an employee of the Professional Association and that the contemplated payment of $75,000.00 dollars as provided for in the Wage Agreement represents payment for personal dentistry services performed by him, payment not yet received by the Professional Association due to the time delay in collecting payments from patients for services performed by the Debtor. Thus, the Debtor urges that the $75,000.00 constitutes exempt earnings within the purview of Fla. Stat. § 222.11.

## CONCLUSIONS OF LAW

This Court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 1334(b), 151, and 157(a) and this is a core proceeding under 28 U.S.C. § 157(b)(2)(B).

Upon commencement of a bankruptcy case under Title 11, United States Code, an estate is created which is comprised of all property in which the Debtor has a legal or equitable interest as of that time. 11 U.S.C. § 541(a) (1993). However, a Debtor may exempt certain property from his/her estate by claiming exemptions as authorized by section 522 of the Bankruptcy Code. Section 522 provides that a state may opt out of the federal exemptions and limit a debtor's rights to only those provided under its state laws. The State of Florida has exercised this option. Fla.Stat. Ch. 222.20 (1995).

The relevant State statute at issue in the case at bar is Florida Statute § 222.11 entitled "Exemption of Wages from Garnishment" which provides, in relevant part, as follows:

(1) As used in this section, the term:

(a) "Earnings" includes compensation paid or payable, in money of a sum certain, for personal services or labor whether denominated as wages, salary, commission, or bonus.

\* \* \* \* \* \*

(2)(a) All of the disposable earnings of a head of family whose disposable earnings are less than or equal to $500 a week are exempt from attachment or garnishment.

(b) Disposable earnings of a head of a family, which are greater than $500 a week, may not be attached or garnished unless such person has agreed otherwise in writing. In no event shall the amount attached or garnished exceed the amount allowed under the Consumer Credit Protection Act, 15 U.S.C. § 1673.

Fla.Stat. 222.11 (1995).¹ The debtor has the burden of proving entitlement to an exemp-

---

**1.** § 222.11 was amended effective October 1, 1993. The statutory changes do not affect the result in this case but are mentioned nonetheless. The revised statute replaces the language "mon-

ey or other thing due to any person … for the personal labor or service of such person," with the term "earnings". The amended statute defines "earnings" as including "compensation

tion. *In re Parker*, 147 B.R. 810 (Bankr. M.D.Fla.1992). In order to meet that burden, a debtor must initially establish that the Debtor is the head of a family residing in Florida. The parties agree that the Debtor qualifies as the head of a family residing in Florida in that he supports his minor child by paying child support and supports his former wife by paying alimony. Thus, the issue before the Court is whether the Deferred Wages constitute earnings paid for personal services or labor within the purview of Florida Statute 222.11.

This Court finds that the Deferred Wages are not exempt under Florida Statute § 222.11. This decision is supported by an analysis of whether the Debtor's services were essentially those of an employee or in the nature of running a business. *See In re Zamora*, 187 B.R. 783 (Bankr.S.D.Fla.1995) (finding that a debtor practicing law as a sole practitioner and running his own marina could not exempt wages therefrom); *In re Manning*, 163 B.R. 380 (Bankr.S.D.Fla.1994) (finding that a debtor who owned and ran a construction corporation with his wife was not an employee entitled to exempt his discretionary distributions to himself under the wage exemption).

■ A debtor that owns or controls a business cannot exempt the funds he distributes to himself from the business simply by calling the distributions wages. For the exemption to apply, the debtor must not only perform personal services for the business, he must also receive regular compensation dictated by the terms of an **arms length employment agreement**. *In re Manning*, 163 B.R. at 382 (emphasis added). Although the Debtor in the case at bar has indeed executed an Employment Agreement with the Professional Association, it is, in substance, an agreement between himself and the only other shareholder and is accordingly enforceable only by themselves. Moreover, the Employment Agreement does not provide for or follow a schedule of regular compensation.

Furthermore, although the Debtor is paid directly for providing personal dentistry labor or services, he is not akin to an employee of the Professional Association because, as his testimony established, he and the other shareholder control the business including controlling the timing and amount of their compensation. As indicated above, the Debtor testified that he and his partner would forego payment if there was not sufficient cash at the time of compensation or, conversely, they would supplement their regular paychecks if additional cash flow was available. Stated simply, even with the employment agreement in existence, the Debtor and his partner ran the business of the Professional Association while also performing dentistry services. They made all decisions about when they got paid and how much they received; the payment of their wages were purely discretionary. Therefore, this Court finds that the Debtor was, in addition to performing dentistry services, running the business of the Professional Association.

■ An analysis of whether the Debtor is an employee or an independent contractor is not directly on point in the case at bar, but is analogous, and therefore helpful, in determining the feasibility of an exemption under the Fla.Stat. § 222.11. In the principal case analyzing the exemption parameters of Fla. Stat. § 222.11, the Eleventh Circuit Court of Appeals held that "money due for personal labor or services" must be money earned as an employee, not money received as an independent contractor. *Schlein v. Mills*, (*In re Schlein*), 8 F.3d 745 (11th Cir.1993). *See also Refco, Inc. v. Sarmiento*, 487 So.2d 75 (Fla.3d Dist.Ct.App.1986); *In re Zamora*, 187 B.R. 783 (Bankr.S.D.Fla.1995); *In re Montoya*, 77 B.R. 926 (Bankr.M.D.Fla.1987); *In re Moriarty*, 27 B.R. 73 (Bankr.M.D.Fla. 1983); *In re Malloy*, 2 B.R. 674 (Bankr. M.D.Fla.1980).

■ While there is no absolute rule for distinguishing between an employee and an independent contractor, several factors have

paid or payable, in money of a sum certain, for personal services or labor whether denominated as wages, salary, commission, or bonus."

In addition, the 1993 amendment expands the definition of exempt bank deposits to be coexten-

sive with the definition of "earnings." For the purpose of this opinion, prior case law defining "money or other thing ... due ... for personal services" remains applicable under amended Florida Statute § 222.11.

been used by Florida courts in making that distinction. These include the control exercised by the debtor; whether there is a contract for a fixed price for certain work; the independent nature of the business; employment of assistants with the right to supervise; obligation to furnish necessary tools and supplies; the right to control work except as to final results; and the method of payment, by time or by job. *See Magarian v. Southern Fruit Distributors,* 146 Fla. 773, 1 So.2d 858 (1941); *In re Manning,* 163 B.R. 380 (Bankr.S.D.Fla.1994); *In re Moriarty,* 27 B.R. 73 (Bankr.M.D.Fla.1983).

The Debtor argues that he is an employee within this framework. However, this Court does not agree. The Court finds that the Debtor is more similarly situated to an independent contractor than an employee because an employee in the sense of a standard employer/employee relationship envisioned by the Florida Legislature in drafting § Fla.Stat. 222.11 is not afforded such latitude or luxury as the Debtor has.

First, despite the fact that the Debtor alone does not have complete control over the Professional Association, the Debtor and Dr. Martel together have complete control over the business of the Professional Association. The Debtor and his partner supervise the Professional Association employees. Clearly, Dr. Martel and the Debtor have complete autonomy to make all business related decisions. Second, although the Debtor has an Employment Agreement executed between himself and the Professional Association which purportedly sets out the amount of compensation, the testimony from both the Debtor and corporate counsel reveal that Exhibit A was left blank. This clearly shows that the amount of the Debtor's compensation was not fixed, but was subject to Dr. Martel and the Debtor's discretion. Third, the Employment Agreement fails to lay out specific terms of employment such as specified work hours and vacation schedules. And last, the Employment Agreement was not an arms length negotiated contract. It is a contract between the Debtor as an individual and the debtor and his partner as officers of the Professional Association. The negotiation of the Employment Agreement conjures up a picture of Woody Allen in "Take the Money and Run" cross examining himself.

■ Furthermore, Florida courts have found that Fla.Stat. § 222.11 was designed to protect the "fruit of one's labor for the benefit of his family." *In re Locke,* 99 B.R. 473, 474 (Bankr.M.D.Fla.1989). This conclusion was based on the fact that the Legislature had used the word "personal" to describe the labor and services. *Id.; In re Montoya,* 77 B.R. 926, 928 (Bankr.M.D.Fla.1987). This Court agrees with such an interpretation and finds it helpful in determining the issue in the case at bar in that the Deferred Wages are essentially a return on the Debtor's equity investment in the Professional Association. The testimony of both witnesses, as well as the evidence introduced, indicates that the contemplated payment under the Wage Agreement is not in the nature of earnings, but rather is a distribution of the equity in Debtor's Professional Association. As the Professional Association's corporate attorney testified, the purpose of the Wage Agreement was to provide for orderly dissolution of the assets and value of the Professional Association. Thus, the intent when drafting the Wage Agreement was to divide the assets of the Professional Association and distribute the equity to the shareholders upon dissolution. The Deferred Wages are best characterized as a return on the Debtor's investment rather than exempt earnings under Florida Statute § 222.11. *See In re Zamora,* 187 B.R. 783 (Bankr.S.D.Fla.1995); *In re Parker,* 147 B.R. 810 (Bankr.M.D.Fla. 1992).

### CONCLUSION

Based upon the foregoing, the Court finds that the contemplated payment of $75,000.00 under the Wage Agreement between the Debtor and the Professional Association does not constitute earnings under Fla.Stat. § 222.11. Accordingly, the $75,000.00 payment at issue is not exempt from the bankruptcy estate.

### ORDER

In accordance with the foregoing, it is hereby **ORDERED AND ADJUDGED** as follows:

1. The payment under the Wage Agreement does not constitute earnings within the meaning of Fla.Stat. § 222.11.

2. The Trustee's Objection to Debtor's Amended Claim of Exempt Property is hereby sustained on the basis that the Debtor is not entitled to claim the payment as exempt under Fla.Stat. § 222.11.

**DONE AND ORDERED.**