226 B.R. 479 (1998)
In re Jimmy N. BRADDY and Janice M. Braddy, Debtors.
Bankruptcy No. 96-07321.
United States Bankruptcy Court, N.D. Florida, Tallahassee Division.
October 5, 1998.
*480 Thomas B. Woodward, Tallahassee, FL, for Debtor.
William Miller, Tallahassee, FL, trustee.

ORDER ON TRUSTEE'S OBJECTION TO CLAIM OF EXEMPTION
LEWIS M. KILLIAN, Bankruptcy Judge.
THIS MATTER came on for hearing on September 17, 1998 on the Trustee's Objections to Property Claimed as Exempt. The issues before the Court are whether the insurance renewal commissions received by Mr. Braddy are property of his estate under § 541 of the Bankruptcy Code and whether Mr. Braddy may exempt those commissions under Florida's wage exemption statute, § 222.11. Having considered the arguments of counsel for both parties, the evidence presented, and for the reasons set forth below, I sustain the Trustee's objection and hold that the renewal commissions are property of the estate and that those commissions may not be exempted as wages under § 222.11.

FACTS
Jimmy Braddy, prior to filing under chapter 13 on July 12, 1996 (subsequently converted to chapter 7 on October 28, 1996), owned an insurance agency. He represented United American Insurance Company, in addition to a few other smaller companies. Mr. Braddy was paid solely by commissions, and he did not receive a regular salary. He did not pay Social Security or other taxes on the commissions he earned. Mr. Braddy paid all of his agency's expenses out of the commissions he received. As of the date of his deposition, May 22, 1998, Mr. Braddy was no longer writing any insurance. He has relinquished his license and retired from the business. According to Mr. Braddy, he does not have any active involvement in the renewal of the policies. Mr. Braddy continues to receive monthly insurance renewal premiums, although the premiums are slowly declining as his clients die or choose not to renew their insurance coverage. Mr. Braddy receives a monthly statement that delineates the total amount of his renewal premium less any amount to be paid back to the client who has died or chosen not to renew. The renewal premiums are Mr. Braddy's main source of income. Mr. Braddy claims that these renewal premiums are exempt from his estate, and the trustee objects to this exemption.
The first issue is whether the renewal premiums Mr. Braddy receives constitute pre-petition earnings and are property of the estate, or whether they are post-petition earnings and are not property of the estate under 11 U.S.C. § 541. The second issue is whether the renewal premiums, if found to be property of the estate, can be exempted under Florida's wage exemption statute. See § 222.11, Fla. Stat. (1998).

DISCUSSION
Once a bankruptcy petition has been filed, whether a voluntary, involuntary or joint case, an estate is created. See 11 U.S.C. § 541(a) (1997). Section 541 of the Bankruptcy Code lists the property that becomes part of the estate. Under § 541(a)(1), the estate includes "[e]xcept as provided in subsections (b) and (c)(2) of this section, all legal or equitable interests of the debtor in property as of the commencement of the case." 11 U.S.C. § 541(a)(1) (1997). Under § 541(a)(6), the estate consists of "[p]roceeds, product, offspring, rents and or profits of or from property of the estate, except such as are earnings from services performed by an individual debtor after the commencement of *481 the case." 11 U.S.C. § 541(a)(6) (emphasis added); see also In re Palmer, 57 B.R. 332, 333 (Bankr.W.D.Va.1986) (stating that the scope of § 541 is broader than its predecessor under the Bankruptcy Act and "is intended to be all embracing"). Therefore, wages earned by the debtor pre-petition become part of the estate, but wages earned post-petition do not become part of the estate. See Palmer, 57 B.R. at 334 ("The decisive factor in determining whether sums of money received post-petition constitute property of the estate is whether such income accrues from post-petition services.").
Bankruptcy courts consider several factors in making a determination of whether renewal premiums are included as property of the estate, including the ratio of work performed by the debtor pre- and post-petition and whether the renewal premiums are conditioned on the debtor's performance of future services. See, e.g., In re Palmer, 57 B.R. at 334 ("[A]n important consideration central to the holding in each case is whether the payments are conditioned upon activities required of the Debtor subsequent to filing of the petition."); In re Blackerby, 208 B.R. 136, 143 (Bankr.E.D.Pa.1997) ("The test to determine whether renewal commissions . . . are property of a debtor's bankruptcy estate under § 541 of the Code is whether payment of the commissions . . . is for services performed by the debtor after the commencement of the bankruptcy case.").
One Florida Bankruptcy Court takes into consideration when the debtor performed "the bulk M.D. Fla.1989" (finding that the bulk of the debtor's work was performed pre-petition and holding that the renewal premiums were, therefore, property of the estate); accord In re Wicheff, 215 B.R. 839, 841-42 (6th Cir. BAP 1998) ("Insurance renewal commissions received postpetition are property of the estate if all of the actions to earn the commissions are completed prepetition."). The Froid court concluded that the debtor "earned his right to the renewal commissions prepetition, that the renewal commissions were vested prepetition, and thus, the renewal commissions are properties of the estate." Froid, 109 B.R. at 483; see also In re Parker, 9 B.R. 447, 449 (Bankr.M.D.Ga.1981) ("[T]he defendant was entitled to receive the renewal commissions, and the right to receive these commissions was in no way conditioned upon future services. . . ."); In re Rankin, 102 B.R. 439, 441 (Bankr.W.D.Pa. 1989) (finding that renewal commissions were property of the estate because "[n]o additional effort of the part of the debtor is required to earn renewal commissions. Since the debtor fulfilled all his obligations prior to the filing . . . the renewal commissions represent payment for past services and are property of the bankruptcy estate.").
Another case from the Middle District of Florida held that renewal premiums were property of the estate but only to the extent that the services were performed pre-petition. See In re Malloy, 2 B.R. 674, 676-77 (Bankr.M.D.Fla.1980). Applying a proportionality test, the court found that because the debtor dedicated 20% of his post-petition time to servicing his clients, 20% of the debtor's renewal premiums were post-petition earnings. Eighty percent of his renewal premiums were pre-petition earnings and, therefore, property of the estate. See id. at 677. The United States Bankruptcy Appellate Panel of the Ninth Circuit applied a similar test when it stated:
Whether and to what extent the renewal commissions are excluded from the estate depends upon whether the debtor's postpetition services are a prerequisite to the right to the renewal commissions and, if so, the extent to which the commissions are attributable to the postpetition services as opposed to prepetition services.
In re Wu, 173 B.R. 411, 416 (9th Cir. BAP 1994).
In In re Bluman, 125 B.R. 359 (Bankr. E.D.N.Y.1991), the debtor argued that although the renewal commissions he earned were partly the result of pre-petition activities, he continued to work for his commissions post-petition. The debtor asserted, "if he were to cease and desist from continuing these activities, the accounts would dry up." Id. at 365. The court was not persuaded by this argument and held that the renewal commissions were property of the estate:
As the renewals to the Debtor are not conditioned on future services and in fact *482 the acts of the Debtor necessary to earn these payments are rooted in the prebankruptcy past, this Court finds that the commissions are not earnings from services of the Debtor and are therefore part of the estate.
Id. at 366. Similarly, in In re Tomer, 128 B.R. 746 (Bankr.S.D.Ill.1991), the court dismissed the debtor's argument that he performed sufficient post-petition activity by stating, "[w]hile the debtor is undoubtedly correct that only continued service will bring full value to pre-petition accounts, it does not follow that the owners of policies written prior to bankruptcy would stop paying premiums or fail to renew if the debtor or his agents no longer called on them." Id. at 761. The court found that:
Because the debtor need not perform further service for such commissions to be paid and because the debtor's right to them accrued prior to bankruptcy, payment of these commissions to the trustee for the benefit of creditors will not impair the debtor's fresh start following bankruptcy, and the trustee is entitled to these commissions as property of the debtor's bankruptcy estate.
Id.
Courts holding that renewal premiums are not part of the estate do so primarily because the debtor continues to sell insurance or perform sufficient post-petition activities. See In re Zahneis, 78 B.R. 504 (Bankr. S.D.Ohio 1987) (holding that renewal commissions were not property of the estate because of continuing contractual relationship); In re Hodgson, 54 B.R. 688 (Bankr. W.D.Wis.1985) (finding that renewal premiums were not property of the estate because the debtor "spends the vast majority of his time servicing old policies"); In re Sloan, 32 B.R. 607, 611 (Bankr.E.D.N.Y.1983) (stating in dicta that "[w]here a debtor derives post-petition commissions under a pre-petition contract, and such commissions are dependent upon the continued services of the debtor, they do not constitute property of the estate"); In re Kervin, 19 B.R. 190, 194 (Bankr.S.D.Ala.1982) (finding that because the debtor continued to work for the insurance agency post-petition, the renewal premiums were not property of the estate); In re Leibowitt, 93 F.2d 333, 335 (3d Cir.1937) (holding that renewal commissions were not property of the estate because "substantial service still must be rendered by the bankrupt in order that the compensation referred to may become payable by the insurance company").
Those cases finding that the renewal premiums are not part of the estate are distinguishable from the case at hand, however. In all of these cases, the decisive factor was that the debtor continued to service the clients after filing for bankruptcy. According to his own deposition, Mr. Braddy was no longer licensed and had retired from the business. Mr. Braddy stated that he has no current active involvement in the policy renewals. His receipt of renewal commissions is not conditioned upon future services.
Mr. Braddy relies on a Florida case where the court found that the debtor's renewal premiums were not property of the estate because the commissions were contingent upon the debtor's remaining the agent of record on the policy. See In re Selner, 18 B.R. 420, 421 (Bankr.S.D.Fla.1982). The Selner court acknowledged that it was recognizing an exception to the general rule that "[c]ommissions earned on renewal of policies sold by an insurance salesman prior to bankruptcy but paid after the filing of bankruptcy are considered property acquired prior to bankruptcy and belong to the estate." Id.
Mr. Braddy's situation is distinguishable from the debtor in Selner. In Selner, the court stated that the renewal commissions were not property of the estate because "the continued payment of this commission is contingent upon Selner's remaining as the agent of record on the policy with all attendant rights and responsibilities." See Selner, 18 B.R. at 421 (emphasis added). Mr. Braddy does not have any further responsibilities. He is retired and has relinquished his insurance license. Therefore, the Selner case does not support Mr. Braddy's argument that his renewal commissions are not property of his estate.
Mr. Braddy receives insurance renewal premiums as a result of services he *483 performed prior to filing for bankruptcy. The commissions are not contingent upon future services to be performed by Mr. Braddy because he is retired, no longer licensed, and admits to having no active involvement with any of his prior clients. Therefore, under § 541(a)(6), the commissions that Mr. Braddy receives are property of his estate.
If renewal commissions are property of the estate, the next question is whether the debtor may exempt those commissions under Florida Statutes § 222.11. While § 522(d) of the Bankruptcy Code lists the property which is exempt under federal law, § 522(b)(1) allows each state to "opt out" of the federal scheme and to adopt its own list of exempt property. See 11 U.S.C. §§ 522(b)(1), (d) (1998). Florida exempts wages from garnishment in Florida Statutes § 222.11. See § 222.11, Fla. Stat. (1998). Under § 222.11, if a debtor is the head of his family and his disposable earnings are less than $500 per week, his disposable earnings are exempt from garnishment. See § 222.11(2)(a), Fla. Stat.
Cases determining the applicability of § 222.11 usually make a distinction between employees and independent contractors. Many cases hold that in order to fit within the purview of § 222.11, a debtor must be classified as an employee, not as an independent contractor. See In re Hanick, 164 B.R. 165, 167 (Bankr.M.D.Fla.1994); see also In re Montoya, 77 B.R. 926 (Bankr.M.D.Fla. 1987); In re Malloy, 2 B.R. 674, 676 (Bankr. M.D.Fla.1980) (stating that because debtor was determined to be independent contractor, debtor was "not entitled to the benefits of the [wage exemption] statute").
In Hanick, the debtor was a real estate agent paid solely through commissions on the policies he sold and was not treated as an employee. He was responsible for all of the costs associated with the business, and he did not pay any Social Security or withholding taxes on the commissions he received. See id. at 166. For these reasons, the court found that the debtor was an independent contractor and not an employee. As such, he was not entitled to the protection of § 222.11. See id. at 167; see also In re Moriarty, 27 B.R. 73, 74 (Bankr.M.D.Fla.1983) (finding that real estate agent debtor who was paid solely by commission, paid no taxes, and provided for his own expenses was independent contractor and not entitled to § 222.11 exemption). The court held that § 222.11 applies only to employees and not to independent contractors. See id.; see also In re Porter, 182 B.R. 53, 56 (Bankr.M.D.Fla.1994) (following the Eleventh Circuit's decision in In re Schlein, 8 F.3d 745, 755 (11th Cir.1993), the court found that in order to fall under § 222.11, the debtor must be an employee and not an independent contractor); cf. Refco, Inc. v. Sarmiento, 487 So.2d 75, 76 (Fla. 3d DCA 1986) (finding that debtor was employee for purposes of § 222.11 because his work was supervised and subject to the approval of his supervisor).
Similarly, the same court found two years later that independent contractors are not entitled to the wage exemption under § 222.11. See In re Lee, 204 B.R. 78, 79 (Bankr.M.D.Fla.1996); but see In re Glickman, 126 B.R. 124 (Bankr.M.D.Fla.1991) (finding that the statute does not limit the wage exemption to employees but covers independent contractors as well). In Lee, the debtor received renewal premiums on life insurance policies that he sold pre-petition. The court found that the debtor was an independent contractor because the debtor ran his insurance agency like a business, and he was not under any obligation to work for any particular insurance company. Also, the debtor was responsible for all of his own expenses. See id.
The facts of Hanick and Lee are similar to Mr. Braddy's situation. While Mr. Hanick was a real estate agent and Messrs. Lee and Braddy were insurance agents, all were paid solely on commissions. All were responsible for all of the costs of their business, and all paid no Social Security or other taxes on the commissions they received. Under the Hanick and Lee approach, Mr. Braddy is an independent contractor and, therefore, does not receive the wage exemption under § 222.11.

CONCLUSION
Based upon the foregoing analysis, Mr. Braddy's renewal commissions are property *484 of his estate, and he is an independent contractor for purposes of § 222.11. Therefore, the commissions are property of Mr. Braddy's bankruptcy estate, and he cannot exempt them under § 222.11. Accordingly, the Trustee's Objections to Property Claimed as Exempt is hereby SUSTAINED, and the exemption is disallowed.